· 8978

MILLER v. SOUTHERN EXPRESS CO.

SAME v. SAME.

SAME v. SAME.

(83 S. E. 449.)

CARRIERS OF GOODS. EXPRESS COMPANIES. NEGLIGENCE. DAMAGES. TREAT-
MENT TO PREVENT HYDROPHOBIA IN SUSPECTED CASES. CHARGE.
EVIDENCE. ISSUES. DIRECTION OF VERDICT.

1. CARRIERS—DAMAGES FROM DELAY—QUESTIONS FOR JURY.—Where, in
   actions against an express company for expenses and damages due
   to the taking of unnecessary treatment for hydrophobia in conse-
   quence of the defendant's delay in delivering the head of the dog
   suspected of having rabies' to an institute to which it was sent for
   examination, several witnesses testified that in their opinion the dog
   did not have rabies, the question whether the treatment was unneces-
   sary was for the jury.

2. CARRIERS—GENERAL DAMAGES FROM DELAY—QUESTION FOR JURY—
   EVIDENCE.—In such case, testimony of an expert that when the dog's
   head was received by the institute, decomposition had so far
   progressed that it was impossible to discover the presence of the
   bacillus which shows the presence of rabies, and that ordinarily
   where one is bitten by a dog and it is doubtful whether the dog had
   hydrophobia, treatment will be taken, authorized submitting the case
   to the jury on the question of the right to recover general damages.

3. CARRIERS—DELAY—DAMAGES—PROXIMATE RESULT.—In order for the
   treatment in such case to be a necessary result of defendant's delay
   in delivering the package to the institute, it was essential that such
   treatment, not only naturally, but necessarily, follow from the delay.

4. CARRIERS—DAMAGES FROM DELAY—CONFLICTING EVIDENCE—QUESTION
   FOR JURY.—That the evidence in such case was conflicting on whether
   the dog had the rabies could not preclude submission of the case to
   the jury.

5. CARRIERS—DELAY IN TRANSMISSION—ACTION FOR DAMAGES—SUFFI-
   CIENCY OF EVIDENCE.—Where the evidence in such action was con-
   flicting on whether where a person is bitten by a dog suspected of
   having hydrophobia, the proper course is to commence treatment at
   once, such question was for the jury.

6. CARRIERS—DELAY IN TRANSMISSION—ACTION FOR DAMAGES—INSTRUC-
   TIONS—EVIDENCE.—Where, in actions against an express company
   for expenses and damages from the taking of unnecessary treatment
   for hydrophobia, due to defendant's delay in delivering the head of
   a dog suspected of hydrophobia to an institute where it was sent for
   examination, the evidence showed that defendant's agent knew that
   the package contained the head of a dog which had bitten the
   shipper's children, and that he had promised prompt delivery, the

Court properly refused to instruct that defendant was not liable for special damages unless the evidence showed that it received the dog's head with notice, not only that it was sent for examination for hydrophobia, but that if it was delayed in transit, the examination could not be had, and that then plaintiff would administer the Pasteur treatment.

7. CARRIERS—DELAY IN TRANSMISSION—ACTION FOR DAMAGES—INSTRUCTIONS—EVIDENCE.—Where in such case there was evidence that the proper thing to do after being bitten by a dog is to wait until the dog is dead before taking treatment and there was no substantial evidence to the contrary, the Court properly refused to instruct that if an immediate administration of the treatment is proper, such treatment could not be the natural result of defendant's negligence.

8. WORDS AND PHRASES—"POSSIBLE"—"PRACTICABLE"—"Possible" is frequently used as a synonym of "practicable," though the use of one as a substitute for the other has been condemned.

9. CARRIERS—DELAY IN TRANSMISSION—ACTION FOR DAMAGES—INSTRUCTIONS—EVIDENCE.—Where in actions against an express company for expenses and damages from the taking of unnecessary treatment for hydrophobia, due to defendant's delay in delivering the head of a dog suspected of hydrophobia to an institute where it was sent for examination, it appeared that defendant must have known that the case was serious and that information to be procured from an examination of the head was needed to start or to stop a treatment, the Court properly refused to instruct that defendant could not be charged with special damages, unless there was evidence that it knew that the treatment had not already been begun, that plaintiff was depending upon the result of the examination before beginning the treatment, and that the examination could not be had if the transportation was so long delayed as to cause decomposition to set in.

Before BOWMAN, J., Greenville, June, 1913.    Affirmed.

Three actions, the first by W. N. Miller, the second by Earle Stone Miller, and the third by Thomas W. Miller, against the Southern Express Company. From judgments in favor of W. N. Miller for $115, Earle Stone Miller for $75, and Thomas W. Miller for $75, the defendant appealed. The facts and exceptions are sufficiently stated in the opinion of the Court.

FOOTNOTE.—See note as to delivery by express companies in **33** L. R. A. 66.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *special, as contradistinguished from general damages:* 39 S. C. 468; 65 S. C. 506; 78 S. C. 330; 6 Wall. 579; 72 Am. Dec. 287; 8 A. & E. Enc. of L. 543. *Notice necessary to allow recovery of special damages:* 70 S. C. 422; 74 S. C. 496; 40 S. C. 527; 71 S. C. 212; 83 S. C. 500; *Ib.* 458; 85 S. C. 19; *Ib.* 21; 81 S. C. 538, and cases there cited. *Judicial notice as to necessity for prompt treatment where hydrophobia is suspected:* 117 Pac. 1088; *Ib.* 1091.

*Messrs. Wilton H. Earle* and *James H. Price,* for respondents, cite: *As to questions of proximate cause for jury:* 62 S. C. 138; 77 S. C. 286.

November 12, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

Mr. W. N. Miller had two children and a little dog. The dog bit both children, and it was noticed that the dog was acting in a peculiar manner. Mr. Miller put the dog in a box and kept it there for several days, when the dog died. He suspected hydrophobia, and when the dog died he had its head cut off and put in a box and sent it to the express office in Greenville, on Monday morning, directed to Pasteur Institute, Columbia, South Carolina. The agent of the express company asked what it was. He was told that the box contained the head of a mad-dog, and that it had bitten three of Mr. Miller's children. The box was then labeled "mad-dog head." The express agent was informed that the head was being sent to Columbia for examination, to see whether the dog really was mad or not. It was said that the label was put on the box so that it might be delivered from the train and not be delayed by going up to the uptown office. The evidence tended to show that the box arrived in Columbia on Monday evening and was carried to the institute that evening, but the institute was closed. That it was carried back early Tuesday

morning and it had not been opened. Later it was carried back and delivered to a carpenter working in the building, but not for the institute. The box was put in the hallway, and the officials of the institute did not get it until Wednesday. By that time the head was so badly decomposed that an examination was not made, for the reason that in the judgment of the officials it was too late to discover the presence of hydrophobia.

The plaintiff claimed on the trial that as a result of the delay in delivery, he was put to expense and was forced to give, and his children to take, the Pasteur treatment for hydrophobia. He then introduced witnesses to show that the treatment was unnecessary, as, in the opinion of these witnesses, the dog did not have hydrophobia.

The defendant admitted that it had received the box, but denied an agreement to deliver Monday evening; admitted that the package was delivered to the carpenter, but claimed that the delay did not render the treatment necessary. That there is no cure for hydrophobia; that when a person once contracts the disease, death is sure and hideous, and whenever a person is bitten by a dog supposed to have hydrophobia the only safe and prudent thing to do is to begin treatment at once, as the treatment is a preventive only. That the disease may develop in five days, and the dog may not die for ten days, and if the disease develops before the treatment is begun, then it is too late.

The defendant claimed that inasmuch as the loss was limited in the receipt to fifty dollars no more could be recovered in any event, and that there was no contract with the children and they could not recover.

These last two questions are not before us. The defendant asked for a direction of a verdict in its favor. This was refused, and verdicts were rendered for plaintiff in varying amounts. From the judgments entered on these verdicts, the defendant appealed.

There are seven exceptions.

The first exception complains of error in not directing a verdict for the defendant, and there are eight reasons assigned for the direction of a verdict.

I. There is no evidence that the dog did not have hydrophobia. If the dog had hydrophobia or rabies then the treatment was necessary.

Several witnesses stated the symptoms and stated it was their opinion that the dog did not have rabies. This made a question for the jury.

"The damages alleged can not be considered as resulting naturally and necessarily from the alleged negligence of the defendant. They can not, therefore, be considered as general damages."

Dr. Coward, the expert, said that decomposition had progressed so far that it was impossible to discover the presence of "negri," or the bacillus that shows the presence of rabies. That when the examination was negative, nearly every one took the treatment. There is, therefore, evidence of general damages.

The fourth ground is based on the idea that the damages are special and need not be considered. If the treatment did not only naturally but necessarily follow from the delay, then there is no such thing as a necessary result.

That there is no allegation or proof that it was discovered after the shipment that the dog did not have rabies. The plaintiff said he thought at the time of the shipment that the dog had rabies; the witnesses as to a different opinion appeared at the trial. It does not appear that there was error here.

The undisputed evidence is that where a person is bitten by a dog suspected of having hydrophobia, the proper course is to commence the treatment at once, hence there was no damage from the delayed delivery.

The evidence does not sustain this position. There was some evidence from the books that the stenographer failed.

22—99

to include in the transcript of the testimony. These
extracts from the books, read to witnesses and introduced
in evidence, are just as much a part of the evidence as the
statements of the witnesses and just as necessary to a com-
plete and satisfactory trial in this Court. The question
here, however, is undisputed evidence. There were two
witnesses for the plaintiff and one for the defendant, who
testified that the proper thing to do is to *wait until the dog
is dead.* Dr. Coward said wait until the dog is dead. That
the treatment itself is not free from danger. That in cases
where the examination is negative, the institute does not
advise treatment. They state the facts and require the
applicant to share the responsibility. The Pasteur treat-
ment is not only attended with danger to the patient, but is
by no means a sure preventive. It is the best thing known,
but not sure to help and may do harm. The perplexity is
distressing in the extreme. Wisdom and nerve are in
demand. The parties may wait too long. They may act
unnecessarily.

One of the witnesses said he knew of no authenticated
case of the recovery of a dumb animal; certainly none of a
human being. If the dog lives the conclusion is that he
did not have rabies. So, then, if the dog lives and the chil-
dren die, the parent and the doctor will have a memory that
will be lasting and ever present, a regret that is akin to
remorse. No wonder the health department does not take
the entire responsibility in doubtful cases.

The Judge could not have directed a verdict on the ground
that the undisputed evidence shows that the treatment
should have commenced as soon as the children were bitten.

The appellant, in its argument, says the seventh might
have been included in the fourth and the eighth with the
sixth. What has been said under those heads is sufficient.

II. "His Honor, the presiding Judge, erred in
refusing to charge the defendants' second request to
charge, which was as follows:

'The express company is not liable to the plaintiff for special damages unless it has been shown by the evidence that at the time it received the dog's head for transportation it had notice, not only that it was a dog's head being sent to the doctor for examination for hydrophobia, but that if it was delayed in transit the examination could not be had, and that then the plaintiff would administer the Pasteur treatment.'

Specification: Such request contained a correct principle of law applicable to the case."

The defendant's agent knew that the package contained the head of a mad-dog that had bitten some of the shipper's children; there was evidence that there was a promise of prompt delivery. There are some matters of common knowledge that every man is supposed to know, *i. e.,* that there is danger from the bite of a mad-dog, and that promptness and special skill are necessary. The fact that the head of the dog is sent to Columbia is of itself notice that there are advantages in Columbia that could not be had in Greenville. It may be, and probably is, true that neither the shipper nor the agent of the defendant knew that the cells of the brain would be destroyed in two days and the brain become a putrescent liquid in which the negri bodies could not be discovered. He did know there was a necessity for haste and that help outside of Greenville was in demand. There is no requirement that the defendant should be served with an itemized account of probable damages.

III. "His Honor, the presiding Judge, erred in refusing to charge the defendant's third request to charge, which was as follows:

'It is essential to recovery by plaintiff that it be made to appear by the evidence that the dog did not have hydrophobia, even if the express company had the notice referred to in paragraph 2 of the requests. Unless it so appear that the dog did not have hydrophobia, it cannot be said that the treatment was unnecessary.'

Specification: Such request contained a correct principle of law applicable to the case."

It has already been stated that witnesses were put on the stand who stated what they saw, and then gave their opinions that the dog did not have hydrophobia.

IV. "His Honor, the presiding Judge, erred in refusing to charge the defendant's fourth request to charge, which was as follows:

'If the jury believe from the evidence, the proper treatment of a child bitten by a dog suspected of hydrophobia is the immediate administration of the treatment, without waiting for an examination to disclose the fact that the dog was affected with that disease, then I charge you that the administration of the treatment after such examination may have been rendered impossible by the alleged negligence of the defendant cannot be considered as a natural result of such negligence.'

Specification: Such request contained a correct principle of law applicable to the case."

There were three witnesses who testified as experts. Two for the plaintiff and one for the defendant, that the proper thing to do is to wait until the dog is dead. The books are not before us, but this extract is before us: "Q. Let's see what the authorities say. The Pasteur treatment should always be begun as soon after the bite as possible. It is useless after the symptoms have declared themselves. A. That's correct; it doesn't say what bite there though. You simply state a bite, whether a rabid dog or any dog." "Possible" is frequently used as synonym of "practicable." While the Century Dictionary contains the substitution of the one word for the other, it puts them down as synonyms. The defendant did have a witness who said, that from what he had read, he thought the treatment should start as soon as the patient was bitten by a suspected dog. This witness had never had a case of hydrophobia in his practice, and only professed to state the

opinions of others. So far as he was concerned, it was a matter of interpretation of hearsay.

As the case appears before this Court, a verdict founded upon the necessity for the use of Pasteur treatment in all suspected cases in the face of the testimony, in the "case" would be a capricious verdict and could not stand. We cannot say, therefore, that it was error to refuse this request.

V. "His Honor, the presiding Judge, erred in refusing to charge the defendant's fifth request to charge, which is as follows:

'Because the express company can be charged with the special damages claimed, I charge you that there must be some evidence that they knew that the authorized treatment had not already been begun; that the plaintiff was depending upon the result of the examination before beginning the treatment; and that the examination could not be had if the transportation was so long delayed as to cause decomposition to set in.'

Specification: Such request contained a correct principle of law applicable to the case."

The defendant must have known that the case was serious and the information was needed to start a treatment or stop a treatment. It does not appear what use the defendant would have made of the information.

VI. "His Honor, the presiding Judge, erred in refusing to charge the defendant's sixth request to charge, which was as follows:

'The plaintiff's claim depends upon the alleged fact that the treatment was unnecessary. If, therefore, the jury believe from the evidence that the plaintiff should have begun the treatment immediately upon the biting of the children by the dog suspected of hydrophobia and before the alleged negligent delay of the dog's head may have occurred, then the basis of the plaintiff's claim is destroyed and the jury should find a verdict for the defendant.'

Specification: Such request contained a correct principle of law applicable to the case."

VII. "His Honor, the presiding Judge, erred in admitting testimony as to the expense of W. N. Miller going to Columbia, upon the ground that the same constituted special damages of which the defendant had no notice at the time of the shipment and of which the plaintiff makes no allegation."

The principles governing these exceptions have already been discussed, and they are overruled.

MR. JUSTICE HYDRICK dissents.