FORT SUMTER HOTEL v. SOUTH CAROLINA
TAX COMMISSION *ET AL.*

(21 S. E. (2d), 393)

52

*Attorney General John M. Daniel, Assistant Attorney General T. C. Callison,* and *Mr. Claude K. Wingate,* General Counsel for Tax Commission, for Appellants,

*Messrs. Mitchell & Horlbeck,* and *Mr. C. R. Burbage,* all of Charleston, as Counsel for Respondent,

August 1, 1942.

CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, delivered the majority opinion of the Court (with MR. CHIEF JUSTICE BONHAM concurring in part and dissenting in part, and CIRCUIT JUDGE A. L. GASTON, ACTING ASSOCIATE JUSTICE, dissenting) :

In this mandamus proceeding, the respondent was the petitioner in the Court below and the appellants were the respondents therein. Perhaps confusion will be avoided if we refer in this opinion to the Fort Sumter Hotel as the *appellee* (although contrary to our usual custom) and to the other parties as the *appellants.*

This appeal is from the order of Judge Grimball dated January 24, 1942, requiring a return to the appellee of certain stamped alcoholic liquors, theretofore seized upon the charge that the same were contraband under the liquor laws of the State, the appellee having executed the bond required by statute, and hence claiming the right to such liquors pending the judicial determination in the appropriate action authorized by statute of the issue as to whether or not these liquors are in fact legally subject to forfeiture and confiscation.

A brief statement of the admitted facts of the controversy before the Court will clarify the issues raised by the appeal. The appellee conducts a tourist hotel in the City of Charleston, and on December 4, 1941, S. J. Pratt, State Constable, and one of the appellants, entered the hotel and seized the alcoholic liquors in question, the same being of the value of about $2,400.00. While these liquors bore all required federal and state revenue stamps they were seized by the constable because he deemed them contraband under the 1939 amendment to the 1935 Alcoholic Liquors Act (Acts 1935, p. 325, Acts 1939, page 303), which in brief provides that the possession of any alcoholic liquors whatsoever in a place of business shall be unlawful, and that a place of business includes any place where goods, wares or merchandise are sold or offered for sale; and it is also provided that all alcoholic liquors found in the possession of a person who has made an unlawful sale within 24 hours be declared to be contraband, and subject to seizure, confiscation and sale. Further reference to this amendment will hereinafter be made.

After the seizure by the constable, the liquors involved herein were turned over to Joseph M. Poulnot, sheriff of Charleston County, one of the appellants, who on January 5, 1942, caused to be published a notice to the effect that he had taken possession of several lots of mixed whiskeys seized by "duly authorized Constables" from a number of parties, including the appellee, Fort Sumter Hotel, giving a

very general description of the liquors so seized as a whole, and stating that the same had been seized because the liquors were being kept for illegal purposes under the 1935 Liquor Act and all amendments thereto. And the notice further stipulates "that any persons claiming the same must appear and make such claim in writing within thirty (30) days from the date of the giving of this Notice, *and give bond as provided by law or otherwise."* (Emphasis added.) The notice further stated that the "said Articles" would be sold on February 4, 1942.

Immediately after this notice was given, to wit, on January 6, 1942, the appellee filed with the sheriff a duly itemized and verified claim in writing for the liquors which had been taken from it as aforesaid, claiming the same as the owner thereof, and with the claim was filed a bond with corporate surety, duly executed in the penal sum of $5,000.00, conditioned for the payment to the South Carolina Tax Commission, in case of the condemnation of the alcoholic liquors so seized, of the full value thereof "and all costs and expenses of the proceedings to obtain such condemnation, including a reasonable attorney's fee;" and the surety to the bond was duly approved by the clerk of the Court of Common Pleas for Charleston County. Notwithstanding the execution and delivery of this bond, however, the sheriff, acting under the direction of the Tax Commission, declined to return the liquors to the appellee.

Thereupon this proceeding for mandamus was instituted upon the petition of the appellee setting forth the facts as above stated and the alleged applicable provisions of law. The appellants filed their answer and return to the petition, denying the appellee's right to the possession of the alcoholic liquors in question under the provisions of the statutes referred to in the petition, and alleging that such liquors could not be returned, unless and until the Court should determine that they were not in fact or in law contraband. A reply to the answer and return was filed by the appellee re-

peating its construction of the statutes involved. And upon the hearing before Judge Grimball he granted an order dated January 24, 1942, designated in the transcript as "writ of mandamus and restraining order." This order requires the return of the seized property to the appellee and also restrains the appellants "from offering at any public sale any of the seized property, the subject of this proceeding." From this order the appeal was taken as above stated.

The parties to this appeal were unable to agree upon the transcript of record, and an order of settlement was handed down by Judge Grimball, dated March 19, 1942, wherein he held that there was but one issue involved in the appeal, which was stated by him in accordance with appellee's contention, while the appellants contended that there were three issues, as stated by them; and hence they also appealed from the order of settlement. It is our view that the question as to what issues are raised by an appeal is one to be determined solely by this Court, upon a consideration of the exceptions in the light of the record of the proceedings in the Court below. Hence we think this order of settlement wherein Judge Grimball purported to determine what issues are involved in the appeal should be, and it is, reversed.

There are six exceptions and (eliminating the first one from our consideration at the moment) we think the following questions are raised by them; and each of these questions will be somewhat briefly discussed by us:

1. Was the appellee entitled to the return of the alcoholic liquors in question under the applicable statutes, having given the bond as therein required?

2. Was the appellee entitled to the remedy of mandamus?

3. Should the Court in this mandamus proceeding have determined whether or not the liquors in question were actually contraband?

The determination of the first question above stated will really be decisive of the case, and to that end we must go more fully into the details of the applicable statutes.

The 1939 amendment to the Alcoholic Liquor Act of 1935, among other things, amends Section 15 of the original act (Acts 1935, page 325) by enlarging it so as to cover the possession in a place of business of stamped liquors, and expressly providing that "all alcoholic liquor found in places of business, as above defined, is hereby declared to be contraband and shall be subject to seizure, confiscation and sale, as is provided in Section 17 of this Act." And there is also a provision in another paragraph of Section 15 as amended as follows: "Provided, further, that such sale shall await and be governed by the event of the trial."

Reference to Section 17 of the original Act will show that it is therein provided that for the purpose of confiscation of alcoholic liquors "the sheriff shall proceed as nearly as may be practicable under the provisions of Subdivision (9) Section 2527, Code of Laws of 1932," thus adopting by reference the procedure provided in the section mentioned.

And that procedure, stated with some abbreviation, is as follows: The officer or person making the seizure shall first cause a list containing a particular description of the property seized to be prepared in duplicate, and shall have the same appraised in the manner required; and the officer or person shall then proceed to publish a notice for three weeks in writing describing the articles and stating the time and place and cause of their seizure "and requiring any person claiming them to appear and make such claim in writing within thirty (30) days from the date of the first publication of such notice." And it is then further provided that any person claiming the property "so seized as contraband within the time specified in the notice may file with the South Carolina Tax Commission a claim in writing, stating his interests in the articles seized, and may execute a bond to the South Carolina Tax Commission in a penal sum equal to double the value of said goods so seized, but in no case shall said bond be less than the sum of one hundred ($100.00) dol-

lars, with sureties to be approved by the clerk of Court in the county in which the goods are seized, conditioned that in the case of condemnation of the articles so seized, the obligators shall pay to the South Carolina Tax Commission the full value of the goods so seized and all costs and expenses of the proceedings to obtain such condemnation, including a reasonable attorney's fee."

And it is further provided that upon the delivery of such bond to the Tax Commission it shall transmit the same with the duplicate list or description of the goods seized to the solicitor of the circuit in which the seizure was made, who shall prosecute the case to secure the forfeiture of the property in the Court having jurisdiction. And the statute says: "Upon the filing of the bond aforesaid the said goods shall be delivered to the claimant pending the outcome of said case."

It is apparent from a review of the record in the case at bar that at the outset the officers purported to comply to some slight extent with the procedural provisions above set forth, for the sheriff published a notice (although not in full compliance with the statutes) giving claimants the opportunity to make claims in writing "and give bond as provided by law or otherwise." Yet, notwithstanding this notice, when the appellee made claim, apparently in precise accordance with the law, and executed and delivered the bond the officers declined to be governed by the statutes and refused to return the goods notwithstanding the bond, alleging that the sheriff had elected to use only so much of the procedural provisions above referred to as related to the advertisement, to the end that the appellee "may have due process of law"; and their contention is that because the incorporation by reference of the procedural provisions is qualified by the use of the phrase "as nearly as may be practicable," the effect is to vest the sheriff with discretion as to what portion of the statutes he shall use.

It is, however, our considered judgment that such a construction of the statutory law would, on the contrary deprive the appellee of due process of law, and that it is not a sound interpretation of the language used by the General Assembly. Certainly the phrase quoted does not purport to give the sheriff or any other officer the right to determine in his discretion what part of the statutory procedure shall be adopted by him. And it will be borne in mind that these are the very statutes under which the officers purport to have acted in making the seizure.

The phrase in question can scarcely be made clearer by definition. It is true that the word "practicable" has been often defined, but its literal meaning, "able to be done," conveys, we think, the correct idea. More fully defined it means "capable of being done or accomplished"; "capable of being performed or effected"; "capable of being put into practice, done, or accomplished." See 49 C. J., 1310. Sometimes it is regarded as synonymous with "possible". *Miller v. Southern Express Company*, 99 S. C., 333, 83 S. E., 449. And perhaps if the word "possible" were qualified as "reasonably possible" this would mean substantially the same as "practicable". But treating the whole phrase, "as nearly as may be practicable", as meaning what the words indicate, to wit, that the procedure must be followed unless there is some valid reason why in some particular respect it is not practicable to do so, it seems quite apparent under the uncontradicted facts of the instant case that it was and is entirely practicable here to follow the procedure throughout.

It may, indeed, be argued that the words, "as nearly as may be practicable", should not be ignored because they must have been put in by the legislature for some reason. But we think that the procedure having originally related to the confiscation of goods merely for the purpose of enforcing a business license tax, the phrase, in question was inserted in the abundance of caution to cover some extraor-

dinary or unusual situation which might arise. Indeed, the use of the phrase is, we believe, not uncommon where previous statutory enactments are incorporated by reference. Furthermore, it is conceivable that under some circumstances (not present in the case at bar) the procedural provisions might not be practicable in every respect. For example, obviously an officer could not sell at public auction and deliver to a purchaser alcoholic liquors seized by him the possession of which would under any and all circumstances be unlawful, and hence such liquors would not be returnable. And in Section 17, immediately following the incorporation by reference of the procedural provisions there is a further proviso: "Provided, Further, That no alcoholic liquors except such as may have been manufactured by a licensed manufacturer, either within or without the State, or alcoholic liquors of unquestioned purity and content, shall be sold at public auction as herein provided, and that any other liquors which may be confiscated shall be destroyed by the proper officers as now provided by law."

The contention of counsel for the appellants that to require the return of the liquors in question to the appellee would have the effect of giving it a supply of contraband liquor to continue an "illicit and unlawful business," is wholly untenable, because the possession of such stamped liquor at a proper place and for proper purposes is not unlawful, and certainly the redelivery of these liquors to the appellee pending the determination of a proper legal proceeding for the confiscation of the same would by no means authorize or excuse the unlawful possession or use thereof.

It seems to us that the language of the statute is plain and mandatory. A good and sufficient bond was given by the appellee pursuant to the sheriff's notice and in precise accordance with the terms of the statute. It was, therefore, the duty of the officers, a ministerial duty, to return the property, and it was further their duty,

under the statute to transmit the papers to the solicitor to the end that a suit should be brought by him for the condemnation of the alleged contraband liquors.

The suggestion by counsel for the appellants that such an interpretation of the statutory law would foster the illegal manufacture and sale of liquors, stamped or unstamped, overlooks the fact that an ample bond must be filed, conditioned not only for the payment of the full value of the liquor, but for all costs and expenses of proceedings to obtain the condemnation, including a reasonable attorney's fee; and moreover, as we have already indicated, only such alcoholic liquors as could be lawfully sold at public sale by the officers could be required to be returned.

But aside from this, we are in full accord with the following statement contained in the order of Judge Grimball:

"The General Assembly has the power and authority to change the statutes in any manner in which, in its best judgment, it may deem wise.

"This Court can now only carry out by its order the plain meaning and intent of the statutes as they appear on the books today. That course alone constitutes the cornerstone of constitutional government."

The second question presented by the appeal, as to the right to the remedy of mandamus, is really answered in the affirmative by what we have already said, since it definitely appears that the appellee is entitled to the return of the liquors under the terms of the statutes hereinabove referred to, and since the duty devolving upon the officers is purely ministerial, mandamus is manifestly a proper remedy, and the appellee had no other *adequate* remedy. The old case cited by counsel for the appellants, to wit, *State v. Bruce, 3 Brev., 264, 6 Am. Dec., 576*, contains a concise and excellent statement of the governing principles, to wit, "It is always incumbent upon him, who claims the benefit of this process,

to shew, 1. That he has a specific, legal right; and, 2. That he has no other specific, legal remedy."

The theory that the appellee should have brought an action at law to recover possession of the liquors in question is demonstrably unsound, especially since this might have placed upon it the burden of being the actor in a suit involving the ultimate question as to whether the liquors were in fact and in law contraband or not; whereas, the statute requires that an action to determine that question shall be brought by the solicitor. And we think counsel for the appellants are in error in their view that the procedural statutes accord no rights to the person from whom the seizure has been made. On the contrary, he is given the specific right upon the execution of a proper bond to regain possession of the property. And indeed, it is significant that in the 1939 amendment it is stated that a sale shall await and be governed by the event of the trial, evidently the trial provided by the statutes.

The fallacy involved in appellants' conception of this mandamus proceeding is that they would enlarge it so as to cover the determination of whether or not the liquors should be adjudged contraband. But if that view were adopted the effect would be to read out the statutory provisions contained in Subdivision (9), Section 2527, Code 1932. It is true that while mandamus is not now usually described, as it formerly was, as a high prerogative writ, it is a somewhat extraordinary legal proceeding rather than an equitable one, although it does adopt in practice some of the equitable rules. But this does not operate to extend the scope of the proceeding beyond the issues properly involved.

It seems to us that an excellent illustration of this is the case of *Ex parte Farmers' Loan and Trust Company*, 129 U. S., 206, 9 S. Ct., 265, 267, 32 L. Ed., 656. In that case the Supreme Court of the United States held that a writ of mandamus should be granted requiring the Judges of the Circuit Court to allow an appeal from an order relating

to a Receiver; and the Court says: "In granting the appeal this court, of course, does not undertake to decide whether the order was rightfully made, if the court had the requisite power, but can only do that upon the hearing of the appeal." In other words, upon the petition for mandamus they decline to extend it to cover the question of the ultimate rights of the parties. See, also, 35 Am. Jur., 114.

We think the third and last question presented by this appeal as above stated should be answered in the negative; that is to say, the question of whether or not the liquors in controversy are subject to forfeiture and confiscation was not before the Court in this mandamus proceeding, and hence could not be adjudicated therein.

The first exception alleges that the Circuit Judge "erred in overruling the demurrers and in not dismissing the petition." Aside from the fact that this exception is too general in its terms, and was virtually abandoned by appellants, no particular consideration need be given to the demurrers since the essential points thereby made are covered by the other pleadings.

The writ of mandamus and restraining order issued by Judge Grimball, dated January 24, 1942, is affirmed.

Messrs. Associate Justices Fishburne and Stukes concur.

Mr. Chief Justice Bonham (concurring in part and dissenting in part):

I concur in so much of the opinion of Mr. Acting Associate Justice Lide as relates to the setting of this case for appeal, and I agree that the order of settlement, wherein the trial Judge attempted to determine the issues involved herein, should be reversed.

Nor have I any fault to find with the affirmance of the restraining order of the trial Judge which enjoined the sheriff, the constable, the South Carolina Tax Commission and its members, from offering at public sale any of the liquor which had been seized. The Circuit Judge was correct

in granting the writ of injunction until the issues involved could be determined under proper procedure.

But I cannot concur in that part of the opinion of Mr. Acting Associate Justice Lide which holds that the writ of mandamus is a proper remedy in this case, and that the petitioner-respondent had no other adequate remedy, and that Judge Grimball was correct in holding that petitioner is now entitled under the law to the possession of the seized property.

The granting of the writ of mandamus was, in my opinion, an abuse of discretion in a case under whose facts and circumstances there is neither necessity nor justification for the use of the extreme power which lies in this writ of high privilege. This writ can never be issued except where it is shown that the petitioner has no other specific legal remedy, a showing which has not been made in this case.

Under the injunction which was properly issued, the property was held intact and immune from sale until such time as a final adjudication could be had under such proceedings as might be brought under the Act of 1935 as amended by the Act of 1939. Thus the rights of the parties were held in *statu quo* until a proper determination of the issues could be made under the controlling statutes.

Judge Grimball, in his order, has held that this proceeding is much in the nature of an action in claim and delivery; an action which was entirely open to the petitioner if it had desired it. With this remedy available, together with the rights which petitioner had under the injunction which protected its status until it could be properly determined under such action as might be brought by the Solicitor, where was the necessity of a resort to the writ of mandamus? Certainly, such a writ will not lie where there exists an adequate remedy at law, as has been pointed out by Mr. Acting Associate Justice Lide by his quotation from the case

of *State v. Bruce et al.*, 3 Brev., 264, at page 270, 5 S. C. L., 264, 6 Am. Dec., 576.

In 18 R. C. L., 114, Section 26, we find: " * * * Upon an application for such writ the questions which usually arise are: (1) Is there a duty imposed upon the officer; (2) is the duty ministerial in its character; (3) has the petitioner a legal right, for the enjoyment, protection or ·redress of which the discharge of such duty is necessary; (4) has he no other and sufficient remedy; and (5) in view of the fact that the issuance of the writ is not always a matter of right are the circumstances of the case such as will call forth the action of the Court?"

And on the same subject, on page 131 of the same volume, we find the following statement of the law: "The common law writ of mandamus is a prerogative writ invented for the purpose of supplying defects of justice, and issued where there was no other means of obtaining justice within the reach of the petitioner. Its object is not to supersede but to supply the want of a legal remedy; therefore to authorize its issuance, ·two facts must co-exist, the right to have the particular act or duty performed and the want of an adequate or specific ·remedy at law. This limitation in effect is frequently carried into the statutes relating to the issuance of the writ, but such a provision is regarded as merely declaratory of the common law practice. * * * "

Under the statutory remedies, petitioner, if it so chose, could have had a legal determination of the question of whether the liquor was contraband and subject to seizure and sale, and. until such time, the restraining order granted by the trial· Judge was in operation, protecting such rights as petitioner had.

The statutes of 1935 and 1939 are police regulations, enacted for the purpose of governing situations such as are involved in this case. The extraordinary resort, by the Circuit Judge, to the peremptory use of the writ of mandamus, under circumstances which could and should be controlled

by the statutes enacted specifically to meet such situations, would, if permitted, completely nullify such statutes.

In the particulars named, I think the judgment of the Circuit Court should be reversed.

CIRCUIT JUDGE A. L. GASTON, ACTING ASSOCIATE JUSTICE (dissenting) :

I think that the judgment of the Circuit Court should be reversed. My reasons may be briefly stated.

In the first place I think that the majority opinion correctly sets forth the general proposition as follows to wit: "Furthermore, it is conceivable that under some circumstances (words in parenthesis omitted by me) the procedural provisions might not be practicable in every respect. For example, obviously an officer could not sell at public auction and deliver to a purchaser alcoholic liquors seized by him the possession of which would under any and all circumstances be unlawful, and hence such liquors would not be returnable."

The majority opinion also states "and moreover, as we have already indicated, only such alcoholic liquors as could be lawfully sold at public sale by the officers could be required to be returned."

The foregoing exceptions of illegal liquor, by the Court's decision, from a return to the owner, upon the execution and tender of a bond leaves open to uncertainty and doubt the disputed fact as to what liquors come within the exception and as to what liquors come within the rule now being judicially announced. For instance unstamped liquor may be seized and sold by the sheriff if it is of unquestioned purity and content. Therefore, a writ of mandamus would lie for its return to the owner before such sale upon execution of the bond.

Section 17 of the Act of 1935 is mandatory and requires a seizure and sale by the sheriff of all unlawful unstamped liquor in the manner set forth in that section. All such liquor is contraband and the same may be "and the sheriff

of the county in which such seizure is made shall take possession of said alcoholic liquors so seized for sale at public auction to the highest bidder, after due advertisement, but no sale shall be made to any person other than licensed manufacturers, wholesalers, or retail dealers licensed under the provisions of this Act, and the sheriff before delivery of any goods so seized to any purchaser shall require the purchaser to affix the proper amount of stamps to the individual packages, as above defined."

The Act of 1939 declares that all alcoholic liquor found in places of business is contraband and subject to seizure and sale as provided in Section 17 of the Act of 1935. The Act of 1939 makes it unlawful to store or have in possession in any place of business, except a licensed liquor store, any alcoholic liquor whatsoever. (Acts 1939 at page 307.) This includes and covers stamped and unstamped liquor in a place of business. All such liquor is illegal, illicit, and contraband. The law says it must be seized and sold by the sheriff. It is all contraband. The law does not permit one person to file a bond and obtain possession of contraband liquor, if stamped, and deny the right to another person to file a bond and obtain possession of contraband liquor, if not stamped. Both are contraband and both are equally subject to confiscation under the law.

It is not practicable to apply the procedure as to a bond in either case, but it is equally unlawful in either case.

The remedy under the law is that the sheriff shall not sell the liquor at once but "that such sale shall await and be governed by the event of the trial." (Acts 1939, Section 15, page 307.)

Due process of law is had by the event of the trial. Should such illegal, illicit, contraband liquor be retaken from the sheriff before the trial all of the evidence would be gone and the trial would be futile. The Court does not favor the use of its process to defeat justice. The Court in the case of *Griste v. Burch,* 112 S. C., 369, 99 S. E., 703, 704, has

this to say: "Under such circumstances, the court will not permit the use of its process. *Lanahan v. Baily,* 53 S. C. 489, 31 S. E., 332, 42 L. R. A. 297, 69 Am. St. Rep. 884; *Rountree v. Ingle,* 94 S. C. 231, 77 S. E. 931, 45 L. R. A. (N. S.), 776, Ann. Cas. 1915-A, 1002; *Elder Harrison Company v. Jervey,* 97 S. C. 185, 81 S. E. 501.

"In the first-mentioned case [53 S. C. 489, 31 S. E. 334, 42 L. R. A. 297, 69 Am. St. Rep. 884], this court quotes with approval the following language from *Bank v. Owens,* 2 Pet. 527, 7 L. Ed. 508:

" * * * 'No court of justice can, in its nature, be made the handmaid of iniquity. * * * Courts are instituted to carry into effect the laws of a country; how can they, then, become auxiliary to the consummation of violations of law? * * *

" 'There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal.' "

In the case of *Harvie v. Heise, Sheriff,* 150 S. C., 277, 148 S. E., 66, 69, this Court had this to say: "It is not claimed that the statute in question is void; the claim is that it is not applicable for the reason that none of its provisions are violated by the operation of the slot machines in question. The holding of this court being to the contrary, equity will not interpose to enjoin the enforcement of a valid criminal law, or of prosecution under such law. *Cain v. Daly,* 74 S. C. 480, 55 S. E. 110; *Charleston Oil Company v. Poulnot, Sheriff,* 143 S. C. 283, 141 S. E. 454 [60 A. L. R. 750]; [*Palmetto*] *Golf Club v. Robinson, Sheriff,* 143 S. C. 347, 141 S. E. 610."

The mere payment of the license tax and the presence of the stamps on the liquor does not create a lawful right out of an unlawful act of having in possession or storing the liquor in a place of business which is unlawful and prohibited under the statute. *Alexander v. Martin, Sheriff,* 192 S. C., 176, 6 S. E. (2d), 20.