## MISSOURI PACIFIC RAILWAY COMPANY v. HUMES.

### IN ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Argued November 12, 1885.—Decided November 23, 1885.

A statute of a State requiring every railroad corporation in the State to erect and maintain fences and cattle guards on the sides of its road, and, if it does not, making it liable in double the amount of damages occasioned thereby and done by its agents, cars, or engines. to cattle or other animals on its road, does not deprive a railroad. corporation, against which such

---

* *Note by the Court.—Fitch* v. *Baldwin*, 17 Johns. 161; *Freeman* v. *Auld*, 44 N. Y. 50; *Dundas* v. *Hitchcock*, 12 How. 256.

double damages are recovered, of its property without due process of law, or deny it the equal protection of the laws, in violation of the Fourteenth Article of Amendment of the Constitution of the United States.

The legislature of a State may fix the amount of damages beyond compensation to be awarded to a party injured by the gross negligence of a railroad company to provide suitable fences and guards of its road, or prescribe the limit within which the jury, in assessing such damages, may exercise their discretion. The additional damages are by way of punishment to the company for its negligence; and it is not a valid objection that the sufferer instead of the State receives them.

The mode in which fines and penalties shall be enforced, whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are matters of legislative discretion.

This case came from the Supreme Court of Missouri. It was an action against the Missouri Pacific Railway Company, a corporation created under the laws of that State, to recover in double its value damages for killing a mule, the property of the plaintiff below, of the value of $135. It was brought in the Circuit Court of St. Louis under a statute of the State which provided that: "Every railroad corporation formed or to be formed in this State, and every corporation formed or to be formed under this chapter, or any railroad corporation running or operating any railroad in this State, shall erect and maintain lawful fences on the sides of the road where the same passes through, along, or adjoining inclosed or cultivated fields or uninclosed lands, with openings and gates therein to be hung, and have latches or hooks, so that they may be easily opened and shut at all necessary farm crossings of the road, for the use of the proprietors or owners of the lands adjoining such railroad, and also to construct and maintain cattle guards, where fences are required, sufficient to prevent horses, cattle, mules, and all other animals from getting on the railroad ; and until fences, openings, gates, and farm crossings, and cattle guards as aforesaid, shall be made and maintained, such corporation shall be liable *in double the amount of all damages* which shall be done by its agents, engines, or cars to horses, cattle mules, or other animals on said road, or by reason of any horses, cattle, mules, or other animals escaping from or coming upon said lands, fields, or inclosures, *occasioned in either case by the failure to construct or maintain such fences or cattle guards.*

After such fences, gates, farm crossings, and cattle guards shall be duly made and maintained, said corporation shall not be liable for any such damages, unless negligently or wilfully done." Session Laws of 1875, p. 131.

The petition averred the incorporation of the defendant below, the plaintiff in error here; its ownership of a railroad running into and through the city of St. Louis; the ownership of the mule by the plaintiff below on the 1st of August, 1877, and its value; the failure of the company to construct and maintain the fences, gates and cattle guards required by the above statute, at the point on the line of the road in the city where it passed through, along and adjoining cultivated fields, and that the mule was on that day run over and killed by the agents, engines and cars of the company on the road; that the killing was occasioned by the failure of the company to construct and maintain such fences, cattle guards and gates, and that the plaintiff was damaged thereby in the sum of $135. He therefore prayed judgment for $270 and costs.

The defendant answered the petition, denying generally all its material allegations; and averring, as a further defence, that such injuries or damages as were sustained by the plaintiff were caused by his own careless, negligent, and unlawful acts directly contributing thereto.

The plaintiff, in reply, traversed the averments of this second defence.

The action was tried by the court without a jury by stipulation of the parties. The allegations of the petition were established, and the court found the issues in favor of the plaintiff, and assessed his damages at $135. Thereupon, on his motion, the damages were doubled, and judgment was rendered in his favor for $270 and costs.

On the trial, objections were taken by the defendant to the admission of evidence on the part of the plaintiff, and, also, in various stages of its progress, to the prosecution of the action, and to the entry of judgment against the company, on the ground that the statute upon which the action is brought is in violation of and in conflict with:

1st. Section 1, Article 14, of the Constitution of the United

States, in that it was depriving the defendant of its property, so far as it exceeded the value of the stock killed or injured, without due process of law, and in that it denied to the defendant the equal protection of the laws.

2d. Section 20, Article 2, of the Constitution of the State of Missouri, in that it was taking the private property of the defendant against its consent for the private use and benefit of the plaintiff, so far as the amount claimed by plaintiff exceeded the value of the stock killed or injured, and was so far taking and appropriating, without due process of law, the property of the defendant to the use of the plaintiff, which use was private within the meaning of said provision.

3d. Section 30, Article 2, of the Constitution of the State of Missouri, in that, so far as plaintiff sought to recover in excess of the value of the stock killed or injured, it was depriving the defendant of its property without due process of law, and against the law of the land.

4th. Section 53, Article 4, of the Constitution of the State of Missouri, in that it was granting to a class of persons, of which plaintiff was one, a special and exclusive right, privilege, and immunity.

5th. Section 7, Article 11, of the Constitution of the State Missouri, in that it was giving the clear proceeds of the penalty, to wit, the amount over and above the value of the stock killed or injured, to the plaintiff, and not to the school fund, as provided by said section, and that the legislature had provided no remedy, or party plaintiff, for the recovery of such penalty for said school fund.

But the court overruled the objections in each instance, as they were made, and the defendant below excepted to the rulings. A motion for a new trial, and also in arrest of judgment, was made on similar grounds, and was disposed of in the same way against the exception of the defendant.

The case being taken to the Court of Appeals of St. Louis, the judgment was there affirmed *pro forma* without prejudice to either party in the appellate court, both parties waiving any error in such affirmance. The case was then carried to the Supreme Court of the State, where the judgment of the lower

court was affirmed after full consideration and argument; and thereupon this writ of error was brought.

Mr. A. B. Browne [Mr. A. T. Britton and Mr. Thomas J. Portis were with him on the brief] for plaintiff in error.—The statute is repugnant: (1.) To Article 5 of the Amendments to the Constitution, which provides that no person shall " be deprived of life, liberty, or property, without due process of law;" and—(2.) To § 1, of Article 14, which provides that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article 5 is a direct guaranty of a right. Article 14 is a direct prohibition against its invasion. To bring this plaintiff in error within the right guaranteed is to bring this statute within the prohibition declared. A railway company is a "citizen and a person," within the meaning of the terms as used in these articles. *Railroad Tax Case*, 8 Sawyer, 238, 265, by Mr. Justice Field; *Bank of the United States v. Deveaux*, 5 Cranch, 61, 86; *Society for Propagating the Gospel v. New Haven*, 8 Wheat. 464; *Marshall v. Baltimore & Ohio Railroad Co.*, 16 How. 314. The act in question imposes upon the railroad companies (1) the duty of maintaining fences; (2) liabilities in double the amount of damage done in certain cases when the duty is not performed. The power of the State to impose the duties enjoined by this statute is not questioned. Its power to inflict double damage therefor, and hand over to the injured party that which represents double the amount of his injury, is directly challenged, because depriving the corporation of its property without "due process of law," and denying to it the "equal protection of the laws." In *Barnett v. Atlantic & Pacific Railroad*, 68 Missouri, 56, the statute is declared a penal one upon the authority of *Gorman v. Pacific Railroad*, 26 Missouri, 441, 450; *Trice v. Hannibal & St. Joseph Railroad*, 49 Missouri, 438, 440; *Seaton v. Chicago, Rock Island & Pacific Railroad*, 55 Missouri, 416; *Parish v. Missouri,*

*Kansas & Texas Railway*, 63 Missouri, 284, 286.   It by no means follows that, considered either as a penal statute or an exercise of police power, the penalty affixed thereto and the mode of its enforcement is a lawful exercise of legislative power. The police power of the State is defined by Chief Justice Shaw, in *Commonwealth* v. *Alger*, 7 Cush. 84, as "the power vested in the legislature by the Constitution to make, ordain, and establish all manner of wholesome and reasonable laws, statutes, and ordinances, either with penalties or without, not repugnant to the Constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same."   The limitation of such power, is thus defined by Cooley.   "If the power only extends to a regulation of rights with a view to the due protection and enjoyment of all without depriving any one of that which is justly and properly his own, then its possession and exercise by the State, in respect to the persons and property of its citizens, cannot well afford a basis for an appeal to the protection of the national authorities."   Constitutional Limitations, 575.   Similar enactments, imposing similar duties, have been upheld, where the statute gives the injured party the actual amount of his damage.   *Thorpe* v. *Rutland & Burlington Railroad*, 27 Vt. 140; *Suydam* v. *Moore*, 8 Barb. 358; *Corwin* v. *Erie Railroad Co.*, 13 N. Y. 42.   In *Cole* v. *La Grange*, 113 U. S. 1, the court says (at page 7) of the Constitution of Missouri: "The express provisions of the Constitution of Missouri tend to the same conclusion.   It begins with a Declaration of Rights, the sixteenth article of which declares that 'no private property ought to be taken or applied to public use without just compensation.'   This clearly presupposes that private property cannot be taken for private use.   *St. Louis County Court* v. *Griswold*, 58 Missouri, 175, 193; 2 Kent Com. 339 note, 340.   Otherwise, as it makes no provision for compensation except when the use is public, it would permit private property to be taken or appropriated for private use without any compensation whatever."   The same provision in the Federal Constitution should have the same construction.   We deny, however, that this statute is a penal one.   The declara-

tion of the court below is not binding on this court. The terms of the act are penal, but its effect is remedial and it is consequently a remedial statute. See Cooley on Constitutional Limitations, 596; Potter's Dwarris, 74. The liability created by it is to an individual. It is not contended that he has suffered a wrong for which, by natural rules of right or artifical rules of conduct, he is to be compensated. The law discharges its obligation to him and fully protects his rights of property by giving full damages for the injury. Beyond that limit he has suffered no injury, and has no right, natural or otherwise, to demand more. Hence a statute which attempts to give him more cannot be regarded as penal unless it be upon the ground that a public injury may be fully compensated by an individual benefit, and to give a gratuity to one operates as a common benefit to all. *Reed* v. *Northfield*, 13 Pick. 94, does not conflict with this doctrine. As against a municipality, and for personal injuries, such a statute could be upheld. The court below cite a large number of State laws providing double damages or other penalties as upholding the constitutionality of this statute. By examination thereof it will be found that they all relate to acts of wilful wrong, things forbidden by positive law, and equally obnoxious to good morals and natural right. Such is not this case. The decision and opinion in *Atchison & Nebraska Railroad Co.* v. *Baty*, 6 Neb. 37, is in point. It is there held that "the excess beyond the damage sustained, whatever it may be, is so much property taken from one person and given to another." The statute is further obnoxious on the ground that it applies only to railroad corporations, and not to individuals operating railroads.

The court declined to hear argument for defendant in error. *Mr. George P. Jackson*, appeared for the defendant in error, and *Mr. T. K. Skinner* filed a brief for same.

MR. JUSTICE FIELD delivered the opinion of the court. After stating the facts in the language reported above, he continued:

The ruling below on the objections to the validity of the

statute of Missouri, so far as they are founded on its asserted conflict with the Constitution of that State, is not open to review here. As the case comes from a State court, our jurisdiction is limited to the objection that the statute violates the 1st section of the Fourteenth Amendment of the Constitution of the United States, in that it deprives the defendant of property without due process of law, so far as it allows a recovery of damages for stock killed or injured in excess of its value, and also in that it denies to the defendant the equal protection of the laws.

That section, in declaring that no State shall " deprive any person of life, liberty or property without due process of law," differs from similar clauses in the Constitution of every State, only in that they apply merely to the State authorities. The same meaning, however, must be given to the words " due process of law," found in all of them.

It would be difficult and perhaps impossible to give to those words a definition, at once accurate, and broad enough to cover every case. This difficulty, and perhaps impossibility, was referred to by Mr. Justice Miller, in *Davidson* v. *New Orleans*, 96 U. S. 97, where the opinion was expressed that it is wiser to ascertain their intent and application by the " gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded." p. 104.

In England the requirement of due process of law, in cases where life, liberty and property were affected, was originally designed to secure the subject against the arbitrary action of the Crown, and to place him under the protection of the law. The words were held to be the equivalent of " law of the land." And a similar purpose must be ascribed to them when applied to a legislative body in this country; that is, that they are intended, in addition to other guaranties of private rights, to give increased security against the arbitrary deprivation of life or liberty, and the arbitrary spoliation of property. But, from the number of instances in which these words are invoked to set aside the legislation of the States, there is abundant evidence, as observed by Mr. Justice Miller in the case referred

to, "that there exists some strange misconception of the scope of this provision, as found in the Fourteenth Amendment." It seems, as he states, to be looked upon " as a means of bringing to the test of the decision of this court the abstract opinions of every unsuccessful litigant in a State court, of the justice of the decision against him, and of the merits of the legislation on which such a decision may be founded." This language was used in 1877, and now, after the lapse of eight years, it may be repeated with an expression of increased surprise at the continued misconception of the purpose of the provision.

If the laws enacted by a State be within the legitimate sphere of legislative power, and their enforcement be attended with the observance of those general rules which our system of jurisprudence prescribes for the security of private rights, the harshness, injustice, and oppressive character of such laws will not invalidate them as affecting life, liberty or property without due process of law. Within the present century, the punishment of death or long imprisonment was inflicted in England for many offences which are not now visited with any severer penalty than a fine or a short confinement, yet no one has ever pretended that life or liberty was taken thereby without due process of law. And it often happens that heavy and oppressive burdens are imposed by statute upon residents of cities and counties, not merely to meet the necessary expenses of government, but for buildings and improvements of doubtful advantage, which sometimes, as in changing the grade of streets, seriously depreciate the value of property. Yet, if no rule of justice is violated in the provisions for the enforcement of such a statute, its operation, in lessening the value of the property affected, does not bring it under the objection of depriving a person of property without due process of law. It is hardly necessary to say, that the hardship, impolicy, or injustice of State laws is not necessarily an objection to their constitutional validity; and that the remedy for evils of that character is to be sought from State legislatures. Our jurisdiction cannot be invoked unless some right claimed under the Constitution, laws, or treaties of the United States is invaded. This

court is not a harbor where refuge can be found from every act of ill-advised and oppressive State legislation.

It is the duty of every State to provide, in the administration of justice, for the redress of private wrongs; yet the damages which should be awarded to the injured party are not always readily ascertainable. They are in many cases a matter of conjectural estimate, in relation to which there may be great differences of opinion. The general rule undoubtedly is that they should be precisely commensurate with the injury. Yet in England and in this country, they have been allowed in excess of compensation, whenever malice, gross neglect, or oppression has caused or accompanied the commission of the injury complained of. "The law," says Sedgwick in his excellent treatise on damages, " permits the jury to give what it terms punitory, vindictive, or exemplary damages; in other words, blends together the interests of society and of the aggrieved individual, and gives damages, not only to recompense the sufferer but to punish the offender." The discretion of the jury in such cases is not controlled by any very definite rules; yet the wisdom of allowing such additional damages to be given is attested by the long continuance of the practice. "We are aware," said Mr. Justice Grier, in *Day* v. *Woodworth*, 13 How. 362, speaking for this court, " that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument. By the common as well as by statute law, men are often punished for aggravated misconduct or lawless acts by means of a civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured." p. 371. See also *Milwaukee & St. Paul Railway Co.* v. *Arms*, 91 U. S. 489.

For injuries resulting from a neglect of duties, in the discharge of which the public is interested, juries are also permitted to assess exemplary damages. These may perhaps be considered as falling under the head of cases of gross negligence, for any neglect of duties imposed for the protection of life or property is culpable, and deserves punishment.

The law of Missouri, in requiring railroad corporations to erect fences where their roads pass through, along or adjoining inclosed or cultivated fields or uninclosed lands, with openings or gates at farm crossings, and to construct and maintain cattle guards, where fences are required, sufficient to keep horses, cattle and other animals from going on the roads, imposes a duty in the performance of which the public is largely interested. Authority for exacting it is found in the general police power of the State to provide against accidents to life and property in any business or employment, whether under the charge of private persons or of corporations. Under this power the State, or the municipality exercising a delegated authority, prescribes the manner in which buildings in cities shall be constructed, and the thickness and height of their walls; excludes the use of all inflammable materials, forbids the storage therein of powder, nitro-glycerine and other explosive substances, and compels the removal of decayed vegetable and animal matter, which would otherwise infect the air and engender disease. In few instances could the power be more wisely or beneficently exercised than in compelling railroad corporations to inclose their roads with fences having gates at crossings, and cattle guards. The speed and momentum of the locomotive render such protection against accident in thickly settled portions of the country absolutely essential. The omission to erect and maintain such fences and cattle guards in the face of the law would justly be deemed gross negligence, and if, in such cases, where injuries to property are committed, something beyond compensatory damages may be awarded to the owner by way of punishment for the company's negligence, the legislature may fix the amount or prescribe the limit within which the jury may exercise their discretion. The additional damages being by way of punishment, it is clear that the amount may be thus fixed; and it is not a valid objection that the sufferer instead of the State receives them. That is a matter on which the company has nothing to say. And there can be no rational ground for contending that the statute deprives it of property without due process of law. The statute only fixes the amount of the penalty in damages pro-

portionate to the injury inflicted. In actions for the injury the company is afforded every facility for presenting its defence. The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that increase in many cases double, in some cases treble, and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing, with the least inconvenience, the commission of injuries. The decisions of the highest courts have affirmed the validity of such legislation. The injury actually received is often so small that in many cases no effort would be made by the sufferer to obtain redress, if the private interest were not supported by the imposition of punitive damages.

The objection that the statute of Missouri violates the clause of the Fourteenth Amendment, which prohibits a State to deny to any person within its jurisdiction the equal protection of the laws, is as untenable as that which we have considered. The statute makes no discrimination against any railroad company in its requirements. Each company is subject to the same liability, and from each the same security, by the erection of fences, gates, and cattle guards, is exacted, when its road passes through, along or adjoining inclosed or cultivated fields or uninclosed lands. There is no evasion of the rule of equality where all companies are subjected to the same duties and liabilities under similar circumstances. See on this point, *Barbier* v. *Connolly*, 113 U. S. 27, and *Soon Hing* v. *Crowley*, 113 U. S. 703.

*Judgment affirmed.*

Missouri Pacific Railway Company *v.* Terry. In error to the Supreme Court of the State of Missouri. This case involves the

same questions presented and determined in *Missouri Pacific Railway Co.* v. *Humes.* The judgment is, therefore, *Affirmed.*

*Mr. A. B. Browne, Mr. A. T. Britton,* and *Mr. Thomas J. Porter* for plaintiff in error. *Mr. George P. B. Jackson* for defendant in error.