## 15496

### WOODY v. SOUTH CAROLINA POWER CO.

(24 S. E. (2d), 121)

74

February, 1942.

*Messrs. Mitchell & Horlbeck,* and *Messrs. Stoney, Crosland & Pritchard,* all of Charleston, Counsel for Appellant.

*Messrs. Hagood, Rivers & Young,* and *Mr. William C. Ehrhardt,* all of Charleston, Counsel for Respondent, ▮

February 1, 1943.

The Opinion of the Court was delivered by CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE:

The respondent, South Carolina Power Company, maintained a line of poles and high power electric wires along the Charleston-Savannah highway near Red Top, in Charleston County. At this point the line crossed the highway on a diagonal span.

Early in the morning of August 3, 1939, a truck owned by John Brandon, who was hauling for McLeod Lumber Company, and in no way connected with the respondent, was driven in such a negligent and wrongful manner that it left the traveled portion of the highway, ran off the dirt shoulder, and jumped over a ditch which was about two and one-half feet deep. It hit one of the defendant's forty-foot poles with such force as to crush it and to cause one of the wires to break loose from the insulator on the cross-arm and to sag across the highway.

The plaintiff, L. L. Woody, with his wife, two sons and a friend of Mrs. Woody left the City of Charleston at five o'clock on that morning to go on a fishing trip. They proceeded down the paved Charleston-Savannah highway at a moderate speed, and reached a point a few hundred yards beyond the intersection with the John's Island road, when they saw the truck in the ditch. This was only a few minutes after the wreck had occurred. As they drove on a little farther, in the hazy light just ahead of them they saw a wire hanging across the highway, three and one-half to four feet from the ground. The plaintiff's son, who was driving the automobile, attempted to avoid running into the wire, but it became hooked under the upper hinge of the left rear door of the automobile, and the car was brought to a stop. The plaintiff realized that it was a high power line, and discussed with his son the best course to take. The rubber tires of the automobile protected them at the time. He concluded that the wisest thing for him to do was to open the right-hand front door of the automobile and to jump clear of the car so as to avoid touching the automobile and the ground at the same time, and to get a board with which to disengage the wire. Just as he opened the door, his dog which had been lying on the floor of the automobile near the driver, leaped out of the car, and as its front feet touched the ground, a part of the dog came in contact with the plaintiff, who had one foot on the running board of the car, giving him a severe electric shock and causing serious physical injury. The dog was instantly killed. The plaintiff was pulled back into the automobile by his son and after regaining consciousness used a rifle to push the wire from under the hinge. This enabled his son to drive on and turn around, and the plaintiff was taken to a hospital.

The case was tried at Charleston before his Honor, Judge Philip H. Stoll, and a jury. At the conclusion of the testimony, the defendant moved for a directed verdict on the ground that there was no evidence of negligence on its part,

and on the further ground that the only reasonable inference to be drawn from the evidence was that the injury suffered by the plaintiff was not proximately caused by any negligence on its part, but was the result of the intervening act of the truck driver.

His Honor, the trial Judge, granted the motion and directed a verdict in favor of the defendant.

There are three questions raised by the exceptions: Was there any evidence of negligence? If so, was there evidence that the injury of the plaintiff was the proximate result of such negligence? Did his Honor err in his rulings as to the admissibility of certain testimony?

Taking up first the question of negligence, the contention of the plaintiff's that the defendant was guilty of negligence in violating a regulation of the Public Service Commission. Rule 69, Section 3, of the regulations of the commission reads as follows: (3) "The crossing span shall be as short as practicable and in general, the length of the adjoining span on each side shall not be more than fifty (50) per cent. of the length of the crossing span."

This rule of the commission was duly filed in the office of the Secretary of State on November 8, 1937, and was published in the Acts of 1938, page 3013, and may be found in the Code of 1942, in Volume 4, at page 737, just after Section 8210.

The plaintiff says that the Power Company violated the rule in having the crossing span as long as 248.4 feet, instead of having it as short as practicable; and in having adjoining spans of about 300 feet, instead of one-half the length of the crossing span. He contends that the adjoining spans should not have exceeded 124.2 feet, which would bring the poles nearer to the crossing span, and, according to plaintiff's view, would have permitted a lesser degree of sag if one of the corner poles were knocked down. The plaintiff says that if this had been done, the wire would have not sagged low enough to have touched his automobile.

The Public Service Commission has been given authority to supervise and regulate the service of public utilities and to fix just and reasonable standards and regulations. Code of 1942, section 8204, and 8210.

Its reasonable rules and regulations when properly filed and published have the power and effect of law, and, of course, must be observed by power companies. *Brownlee v. Charleston Motor Express Co.,* 189 S. C., 204, 200 S. E., 819; Act March 26, 1937, 40 St. at Large, page 174.

The violation of a rule or regulation prescribed by proper authority for the safety of the public and which has the power and effect of law is at least evidence of negligence. 45 C. J., 732.

The alleged violation of the rule is the only basis here for a charge of negligence, since no other act of negligence on the part of the defendant at common law or under a statute is both alleged in the complaint and disclosed by the evidence. The testimony of several witnesses that there is no safe or practicable way to insulate a wire carrying 13,000 volts of electricity, is uncontradicted. So the question is narrowed down to this: Was there evidence of a violation of the rule?

If the defendant violated the express terms of such a regulation, the question of negligence, if proximately causing injury could not have been taken from the jury; and this is true whether a violation of a rule is negligence *per se,* as claimed by the plaintiff, or merely evidence of negligence. However, in this case, it is important to note the language of the rule and to observe that instead of designating a precise length for the crossing span it merely says that the crossing span "shall be as short as practicable," and further that instead of stating that the adjoining spans shall in every instance be half as long as the crossing span the rule says that "in general" this shall be

so. It appears, then, that the rule is not intended to be inflexible.

In the case of *Fort Sumter Hotel v. South Carolina Tax Commission,* 201 S. C., 50, 21 S. E. (2d), 393, 396, filed August 1, 1942, in discussing the meaning of the word "practicable" the Court ·among other definitions gave this one: "And perhaps if the word 'possible' were qualified as 'reasonably possible' this would mean substantially the same as 'practicable.' "

The word "practicable" is quite akin to the word "practical", which is defined in the case of *Locklear v. Southeastern Stages,* 193 S. C., 309, 8 S. E. (2d), 321, 324, as follows: "In our opinion, the word 'practical' is not to be given too literal a construction or interpretation. It does not necessarily mean that which is physically possible or mechanically practicable, but rather that which is possible of reasonable performance, including the element of reasonable safety under the existing circumstances."

Clearly, then, the word as used here does not mean the same thing as "possible," since, of course, the shortest possible line across a highway would be at right angles to it. In this regulation we think the meaning is that the span shall be as short as is reasonably possible, taking into consideration the mechanical factors and the necessity for reasonable safety to the public.

The phrase "in general" is not inflexible or absolute, but carries with it the idea that under certain conditions there may be a variation from the standard, without constituting a violation of the rule.

It is therefore proper to consider the conditions surrounding this particular locality, and to inquire whether there was any evidence that the crossing span was longer than was practicable, or whether in view of the conditions at this point a departure from the general requirements of the rule as to the spacing of the poles constituted a violation of its terms, and consequently evidence of negligence.

The power line was constructed along the side of the road on the edge of the right-of-way as permitted by Sections 8531 and 8540 of the Code of 1942, and carried 13,000 volts of electricity. The location of the pole in question was arranged under the supervision of the State Highway Department. It was placed outside of the traveled portion of the highway, 8.8 feet from the edge of the dirt shoulder, 15 feet from the edge of the paved portion, and well beyond the ditch running alongside the road. In the direction in which the plaintiff was proceeding the line had been on the left of the road. At the place in question, as directed by the Highway Department, the line crossed the highway diagonally in order to avoid some shade trees which were on the left of the road.

The evidence shows that the ideal power line is one erected in a straight line without any turns in it at all, and that in such case the distance between poles should be as nearly equal as is practicable. Here the line alongside the highway was constructed with poles 300 feet apart. It is of course not always possible to have a straight line, but when a change in direction is necessary the testimony shows that it should be made with the smallest angle that is practicable, so as to avoid putting an undue stress upon the corner poles, and to have a line of maximum safety to persons using the highway. In the diagonal crossing of the highway at the point in question, the uncontradicted testimony of the witness is that the crossing span, constructed in the effort to avoid a sharp angle and to save the trees, was as short as was practicable in the circumstances. We think that there is no evidence to show that a shorter crossing span would have been practicable.

The real contest of the plaintiff was as to the length of the two adjoining spans. He contends that there were no such unusual conditions at the location of the crossing as would authorize a variation from the general requirements of the rule, and that, in any event, that question should have been

submitted to the jury. He points to the testimony of the witness John McCrady, who said that if the adjoining span had been made half the length of the crossing span, it would have shortened the crossing span wire when the pole broke, so that the automobile could have gotten under it. This testimony did not purport to take into consideration the possibility that a shock to the angle pole might also knock the wire loose from the other pole of the adjoining span, if brought as near as 124.2 feet. The witness based his testimony on a sag of wire between uninjured poles and crossarms at certain distances apart.

The testimony of the expert witnesses, all of whom inspected the surroundings, is that at this crossing the line as it was constructed, was much safer than it would have been if the adjoining spans had been reduced to 124.2 feet, since in such circumstances the hazard of breaking crossarms, wires, and the pole itself by a shock to the corner pole is greatly increased. It appears that short adjoining spans at this place would be more rigid, and would make it more likely that the wires would break. They would not allow a flexibility for vibration, or an equalizing of the strain on the poles. The expert witnesses testified that in their opinion at the location of the accident the line was properly constructed so as to give the maximum of safety, and to have the length of the adjoining spans half the length of the crossing span would have created an unnecessary hazard, which was avoided by the construction which was adopted.

The rule does not state what circumstances should exist to warrant the construction of longer adjoining spans.

However, even if we assume for the purpose of argument, that there were no unusual conditions at this point, and if we assume that there was evidence of a violation of the commission's rule, and consequently some evidence of negligence, it would of course not be actionable unless it were a proximate cause of the plaintiff's injury.

Before the pole was knocked down by the act of the truck driver, there had been a safe highway, with a clearance of 31.1 feet, so that the plaintiff and the public in general could have passed under it with perfect safety. Even assuming that there was a negligent construction, yet it resulted in no harm to anyone, and no doubt thousands of people had traveled this important highway without the slightest injury. It was not until the truck driver, in no way connected with the defendant, broke the pole, that the wire sagged so as to come in contact with the plaintiff's automobile. The defendant was in no way responsible for the actions of the truck driver, who handled his automobile in a negligent manner. But for this wrongful act of the truck driver, the plaintiff would not have been injured.

In the case of *Locklear v. Southeastern Stages, Inc.,* above, the law as to intervening causes is very clearly set forth:

"Our decisions are all to the effect that liability exists for the natural and probable consequences of negligent acts or omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising. *Johnston v. Atlantic Coast Line R. Co.,* 183 S. C., 126, 190 S. E., 459; *Crawford v. Atlantic Coast Line R. Co., supra* [179 S. C., 264, 184 S. E., 569]; *Tobias v. Carolina Power & Light Co.,* 190 S. C., 181, 2 S. E. (2d), 686.

"We have held that when the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the

former only the indirect or remote cause. *Carter v. Atlantic Coast Line R. Co.,* 109 S. C., 119, 95 S. E., 357, 11 A. L. R., 1411; *Martin v. Southern Ry.,* 77 S. C., 370, 58 S. E., 3, 122 Am. St. Rep., 574; *Miller v. Atlantic Coast Line R. Co.,* 140 S. C., 123, 138 S. E., 675.

\*  \*  \*  \*  \*

"The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen. *Horne v. Atlantic Coast Line R. Co.,* 177 S. C., 461, 181 S. E., 642; *Johnston v. Atlantic Coast Line R. Co., supra*; *Keel v. Seaboard Air Line Ry.,* 122 S. C., 17, 114 S. E., 761; *Harrison v. Berkley, supra* [1 Strob., 525, 47 Am. Dec., 578]; *Cooper v. Richland County,* 76 S. C., 202, 56 S. E., 958, 10 L. R. A. (N. S.), 799, 121 Am. St. Rep., 946."

It seems to us that the wrongful act of the truck driver and its results could not reasonably have been foreseen in the circumstance. No one lawfully using the highway could possibly have come in contact with the pole. The defendant could not reasonably have anticipated the fact that the driver of a truck would wrongfully drive it over the edge of the highway, across the ditch, and strike the pole with such force as to knock a wire loose from it.

We think that the only reasonable inference which may be drawn from the evidence is that the intervening act of the truck driver was a new and independent force which broke the causal connection between the defendant's act

and the plaintiff's unfortunate injury; that it was the sole proximate cause, and that the negligence of the defendant, if it existed, was a remote and not a proximate cause of it; it merely brought about a condition and was not a concurrent proximate cause of the injuries.

We shall now take up the exceptions which bear upon the admissibility of certain testimony.

The plaintiff objected to the introduction by the defendant of the testimony of expert witnesses which tended to prove that the line had been safely constructed. The plaintiff contends that such testimony sought to vary or contradict the rule of the Public Service Commission. In our opinion the evidence was properly admitted by the Circuit Judge, not with a view of contradicting the regulation, but for the purpose of attempting to show that this crossing span was as short as practicable, of showing all of the surroundings, and of refuting the claim of common-law negligence. We think that the testimony was responsive to the issues made by the pleadings, the complaint having alleged that the line was constructed negligently, and in violation of the rule of the commission, and this allegation having been denied in the answer.

It is urged that the trial Judge was in error in refusing to admit a part of the testimony of the witness, John McCrady. He was a civil engineer and had been permitted to testify to the degree of sag in wire placed on poles certain distances apart. He stated the difference in the sag if the poles were 550 feet apart, and 372 feet apart. His testimony shows that the greater the distance between the poles the greater would be the sag in the wire. He then undertook to testify as to what degree of sag would have resulted if the corner pole had been knocked down and if the next pole had been 124 feet away instead of 302 feet, and to demonstrate this with a piece of string on a model which he had with him.

We think that the trial Judge properly exercised his discretion in excluding this evidence. The witness was not an expert in the construction of power lines. We think that his Honor correctly held that a person who is unversed in matters relating to power lines would not be qualified to give testimony necessarily involving an opinion as to the effects of a severe shock to a corner pole and whether or not it would be likely to break several cross-arms. Before a witness is permitted to testify to matters of this sort, it should appear that he has some special skill or experience respecting the subject involved.

The appellant also says that the trial Judge erred in refusing to admit the testimony of a police officer and two garage employees to the effect that they had known of instances where people at other places drove their automobiles off the road and hit telegraph and power poles. The testimony was offered for the purpose of showing that the defendant knew, or should have known, that such accidents did sometimes occur. The Court held that the testimony was irrelevant.

It is well settled that the admission of evidence is largely within the discretion of the trial Judge. We do not think that the exclusion of the testimony was prejudicial to the plaintiff. The fact that other persons may have driven negligently at altogether different times and places would not be sufficient to cause the defendant here reasonably to have foreseen that the driver of a truck would not only leave the highway at this point, but that he would cross the ditch, and strike the pole with such force as to shatter the lower part of it, and knock the wire from the crossarm.

All of the exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur.