STATE of North Dakota ex rel. Herschel **LASHKOWITZ**, John A. Oakey, and John W. Markey, Petitioners and Plaintiffs and Respondents,

v.

**CASS COUNTY,** a Municipal Corporation; P. M. Paulsen, Cass County Judge, Rhoda Lee, Cass County Auditor, and C. A. Baumgartner, Cass County Treasurer, Constituting the County Redistricting Board of Cass County, North Dakota; Rhoda Lee, County Auditor; and H. L. Bohnet, Kenneth A. McKinnon, Ingolf Sandbeck, Lewis Sutton, and Ray Kasowski, Individually and as Commissioners of Cass County, North Dakota, Respondents and Defendants and Appellants.

Civ. 8347.

Supreme Court of North Dakota.

April 5, 1968.

Rehearing Denied May 28, 1968.

Eugene A. Kruger, State's Atty., Fargo, for appellants.

Conmy, Conmy & Feste, Fargo, for respondents.

STRUTZ, Judge (on reassignment).

This appeal from the judgment of the district court of Cass County involves the validity of Chapter 11-07, North Dakota Century Code, which provides for redistricting of counties of the State. The trial court held that the entire statute was invalid.

Chapter 11-07 provides:

"11-07-01. County redistricting board—Membership—Powers.—The county judge, the auditor, and the treasurer of each county shall constitute a redistricting board, and such board may change the boundaries of the commissioners' districts of the county in accordance with the provisions of this chapter upon the filing with it of a petition as provided in this chapter.

"11-07-02. Petitions—Signers required—Filing.—A petition asking that the boundaries of the commissioners' districts in the county be changed must be signed by at least twenty-five per cent of the qualified electors of the county as determined by the number of votes cast for the office of governor at the preceding general election. The petition shall be filed in the office of the county auditor.

"11-07-03. Board determines if districts should be changed—Auditor calls meeting of the board.—Within twenty days after the petition is filed, the county auditor shall call a meeting of the redistricting board to consider the petition. If it appears that the commissioners' districts of the county are not reasonably equal in population or extent of territory, the board shall proceed at once to redistrict the county into commissioners' districts.

"11-07-04. How county redistricted. —In redistricting a county, the redistricting board shall make the districts as regular and compact in form as practicable, and as nearly equal in population as possible. The equality of population in the districts shall be determined by the vote cast at the last preceding general election. No new district shall be so formed that any two of the then acting commissioners shall reside in the same district, nor shall any county be so redistricted that any municipality therein shall form any part of a majority of the commissioner districts in such county."

The facts are not in dispute, the parties having stipulated necessary facts for the record. The record discloses that the 1960 population of Cass County was 66,947. Of this total population, 46,662 persons resided in the city of Fargo and 20,285 were living in the balance of the county. The county is divided into five commissioner districts, the city of Fargo and five adjacent rural townships comprising the first and second districts, while the balance of the county is divided into the remaining three commissioner districts. The present districts and their population, as determined by the 1960 census, are as follows:

The first district, with a population of 28,530; the second district, with a population of 24,954; the third district, with a population of 4,940; the fourth district, with a population of 4,872; and the fifth district, with a population of 3,651.

From these figures, it will be noted that the vote of persons living in the first and second commissioner districts of Cass County is not nearly so effective as the vote of persons residing in the balance of the county outside of these two districts.

It is undisputed that the county is an important unit of local government. It exercises general governmental powers which directly affect all of the citizens living in the county, such as administration of welfare services, levying of taxes, construction of bridges and highways, erection and maintenance of the courthouse, hospital, and jail; that these and other duties have an immediate and personal impact upon all of the citizens of the county.

■ Until recently, there has been doubt whether the principle of "one person, one vote" would be applied to local units of government which do not have express legislative powers. The members of this court have been hopelessly divided on this issue. However, the decision of the United States Supreme Court in the case of Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, which was decided on April 1, 1968, now has settled this question. The law of the land, as interpreted by that decision, now holds that the Equal Protection Clause as set forth in the Fourteenth Amendment of the United States Constitution permits no substantial variation from equal population in determining districts for units of local government which have general governmental powers over the area which they serve. The *Avery* decision specifically provides that the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution requires that units of local government having general powers over an entire geographic area may not be apportioned among single-member districts which have substantially unequal populations.

■ The *Avery* decision thus would render unconstitutional that portion of Section 11–07–04, North Dakota Century Code, which provides that no county shall be so redistricted that any municipality therein shall form any part of the majority of the commissioner districts in the county, regardless of population. Whether county commissioners have any legislative powers no longer is material. They do have general governmental powers over the counties and thus they come within the purview of that decision. We therefore hold that that portion of Section 11–07–04 of Chapter 11–07 is unconstitutional.

Having found that the portion of Section 11–07–04 which prohibits any municipality from forming a majority of the commissioner districts of a county invalid, are the remaining portions of the chapter valid? We think not. Section 11–07–03 provides that if the board set up by law to redistrict the county finds that the districts of the county are not reasonably equal in population *or* in extent of territory, it must redistrict.

This means that if one or the other basis for redistricting—reasonably equal population or reasonably equal extent of territory —is not present, the board must act. The fact that the board may refuse to act when the extent of territory is reasonably equal permits apportionment on a basis other than population and thus violates the "one person, one vote" principle.

■ On the other hand, if we were to assume, for the sake of argument, that Section 11–07–03 means that the board must act unless it finds that the districts were reasonably equal, both in population and in extent of territory, we would be construing the section to produce a ludicrous result. Under that construction, a group of citizens might petition for redistricting because the districts are not reasonably equal in population, and the board would proceed to redistrict the county on a population basis. Another group could then contend that the districts, having been made equal in population, have been made grossly unequal in extent of territory because of the presence of urban areas in the county, and such group could demand a redistricting because the districts are not reasonably equal in extent

of territory. Both demands could not be complied with. In the construction of a statute, words must be given their plain, ordinary, and commonly understood meaning. Bronson v. Johnson, 76 N.D. 122, 33 N.W. 2d 819.

■ We therefore find that Section 11–07–03 is invalid in that it violates the Due Process Clause and the Equal Protection Clause of the Federal Constitution.

But it is contended that even though a portion of Section 11–07–04 and all of 11–07–03 are invalid, the balance of the statute still must be upheld. The remaining sections of the law do provide for a redistricting board and for the securing and filing of petitions to bring about a redistricting of the county. Under Section 11–07–02, if a petition for redistricting of a county is presented which is signed by at least twenty-five per cent of the qualified electors of the county, the board shall proceed to redistrict, if the conditions which require redistricting are found to exist.

■ We believe Section 11–07–02 also is invalid in that it violates the Due Process Clause of Article XIV of the United States Constitution. Article XIV provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The right of franchise is one of the greatest privileges of an American, and that right clearly is infringed by Chapter 11–07, North Dakota Century Code. In order to secure redress for the infringement of his rights, however, Section 11–07–02 requires an elector to secure the signatures of at least twenty-five per cent of the qualified electors of the county. Those electors living in the three favored commissioner districts would, of course, refuse to sign such petitions since they have a favored position under the present law. So the statute actually requires an aggrieved person to obtain the signatures of a greater percentage of the electors of the remaining districts in order to secure redress of his rights.

Section 22 of the North Dakota Constitution provides that "All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law."

Section 11–07–02 would compel a person to go to the expense of obtaining a large number of signatures to petitions in order to secure his sacred rights as an American citizen. For reasons stated herein, we believe that Section 11–07–02, North Dakota Century Code, is invalid.

■ This leaves Section 11–07–01 of the Act remaining. That section merely provides for a county redistricting board. Standing alone, it is absolutely meaningless. 16 Am.Jur.2d Constitutional Law, Sec. 186, p. 414. We therefore hold the entire chapter to be invalid.

■ We are aware of the difficult problems which will face the next Legislature as a result of this decision. In order that the continuity of county government shall not be interrupted, we hold that corrective relief required by this decision shall be deferred to give the Legislature an opportunity to enact a valid districting law, which should contain a provision for the orderly transition of the governmental powers to the commissioners elected thereunder. Until that time, present boards of county commissioners shall continue to function. The commissioners whose terms will expire in January 1969, or others seeking the same office, shall be nominated and elected for the interim in accordance with present statutes.

This court will retain jurisdiction in this case, and if for any reason a valid system of districting in county government is not provided for by the next Legislative Assembly, the respondents may apply to this court for further relief.

ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., participating on the briefs.

TEIGEN, Chief Justice (concurring in part and dissenting in part).

The majority have struck down the whole of Chapter 11-07, N.D.C.C., as being unconstitutional. I do not agree that the whole chapter is unconstitutional. I feel that portion of Section 11-07-04, N.D.C.C., which reads: "nor shall any county be so redistricted that any municipality therein shall form any part of a majority of the commissioner districts in such county.", is unconstitutional under the decision cited in the majority opinion of Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, decided by the United States Supreme Court and released on April 1, 1968. The United States Supreme Court, in that case, held that the actions of local government are the actions of the state and that when the state delegates law making power to local governments and provides for the election of local officials from districts specified by statute, ordinance, or local charter it must insure that those qualified to vote have the right to an equally effective voice in the election process or otherwise it is a violation of the equal protection clause of the United States Constitution. Therefore, the court states the equal protection clause reaches the exercise of state power however manifested whether exercised directly or through municipal subdivisions of the state where the unit of local government has general governmental powers over the entire geographic area served by the body. Thus, the test applied in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, that the body's function was "legislative" is no longer applicable as a limitation but this ruling has been extended to apply to all units of government having "general governmental powers". There being no doubt that the board of county commissioners exercises "general governmental powers" over the entire geographic area which it serves, the holding of the majority is correct in this respect.

It does not necessarily follow, however, that because one part of the statute is unconstitutional the entire section or the entire chapter is violative of the constitution. I am of the opinion that the invalid part of the chapter may be stricken without impairing the remainder of the procedure providing for the redistricting of the county. The objectionable part of the statute was added by an amendment to the law passed in 1949. See Chapter 117, S.L.1949. That amendment added to the statute the words: "nor shall any county be so redistricted that any municipality therein shall form any part of a majority of the commissioner districts in such county."

"Although it is manifest that an unconstitutional provision in a statute is not cured because included in the same act with valid provisions, nonetheless it is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. Indeed, it has been said that whenever a statute contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of the court so to declare and to maintain the act insofar as it is valid.

"The natural corollary to the rule is as firmly affixed in the field of constitutional law as the rule itself. It is that where it is not possible to separate that part of an act which is unconstitutional from the rest of the act, the whole statute falls." 16 Am.Jur.2d Constitutional Law, Section 181, p. 409.

This is also the law in North Dakota. In Menz v. Coyle, 117 N.W.2d 290 (N.D.); Kessler v. Thompson, 75 N.W.2d 172 (N.D.); Department of State Highways v. Baker, 69 N.D. 702, 290 N.W. 257, 129 A.L.R. 925; State ex rel. Cleveringa v. Klein, 63 N.D. 514, 249 N.W. 118, 86 A.L.R. 1523; State v. Ehr, 57 N.D. 310, 221 N.W. 883; State v. Bickford, 28 N.D. 36, 147 N.W. 407, Ann.Cas.1916D, 140; Malin v. La Moure County, 27 N.D. 140, 145 N.W. 582, 50 L.R. A.,N.S., 997, Ann.Cas.1916C, 207; Becker

County Sand & Gravel Co. v. Wosick, 62 N.D. 740, 245 N.W. 454.

In my opinion the objectionable clause contained in Section 11–07–04, quoted above, which is violative of the constitution, may be stricken and there still remains a complete and workable scheme of legislation which is wholly unaffected as to purpose and efficacy by the part eliminated. In fact, it was the scheme of the legislation prior to the 1949 amendment by the legislature. There is no reason to speculate that the legislature would not have passed one without the other. There is no presumption of entirety in effect, but an opposite presumption of separability. The constitutional and unconstitutional portions are not dependent on each other and it is clear that the purpose of the amendment was to accomplish a single object by the insertion of a new and wholly foreign condition not related to the other provisions of the chapter. 16 Am.Jur.2d Constitutional Law, Section 186, p. 414.

The majority have held that Section 11–07–03 is also unconstitutional. With this I do not agree. This section provides that when the redistricting board meets at the call of the county auditor to consider the petition for redistricting filed with him (as provided by Section 11–07–02, N.D.C.C.), that before acting upon the petition they must first determine whether it appears that the commissioners' districts are "not reasonably equal in population or extent of territory" and if they find either of these conditions exist, they shall then "proceed at once to redistrict."

The conditions imposed upon the redistricting board by this statute involve a legislative policy which should not be encroached upon by the courts. It is not for the courts to determine the wisdom of a statute and this is particularly so where the statute was enacted by the legislature to guide a public body of its creation to which it has delegated a legislative power. The power of a state in controlling its own governmental agency and political subdivisions, is generally unrestrained by the requirement of due process of law, since it is a limitation upon the state itself. 16A C.J.S. Constitutional Law § 570, p. 588.

Furthermore, the redistricting board has not challenged the constitutionality of Section 11–07–03, N.D.C.C., and it is a fundamental rule that the constitutionality of a statute may not be challenged except by one who is injured or aggrieved by it. There is no evidence that the plaintiff in this action is so injured or affected by this section.

Section 11–07–03 does not provide the method by which the redistricting is to be accomplished, nor is it any guideline to the redistricting board in redistricting. In redistricting, it is governed by Section 11–07–04 as it remains after the objectionable and unconstitutional language is eliminated. This section provides that in redistricting the county, the board shall make the "districts as regular and compact in form as practicable, and as nearly equal in population as possible." It provides the formula which it must apply in making its determination. There are two elements which must be taken into consideration; one involves the area, and the other is population. To be "regular", I believe the boundaries must be "steady or uniform in course, practice, or occurrence: not subject to unexplained or irrational variation: steadily pursued: orderly". Webster's Third New International Dictionary. It must also be "compact", that is: "firmly put together, joined or integrated". Webster's Third New International Dictionary. There is no requirement that the districts be equal in size or area. The statute merley provides that the districts shall be as regular and compact in form as practicable. However, each district must be "as nearly equal in population as possible." This is a mandate. Thus, although under Section 11–07–03, the extent of territory of a district or the districts shall be taken into consideration in determining whether or not the board shall assume jurisdiction, it is not a consideration to be taken into account if they redistrict. In determining the form of the districts, the board must also take into

consideration residence of the then acting county commissioners as the districts must be so formed that two of them do not reside in the same district. This requirement relates to the form the district shall take.

Lest it be argued that the redistricting board must also take into consideration the extent of territory in redistricting (because it is referred to in Section 11–07–03), I wish to point out that the word "practicable" referring to the districts and the word "possible" referring to the equality in population, are not synonymous. Webster's Third New International Dictionary defines "practicable" as: "capable of being put into practice, done, or accomplished; feasible". The word "possible" is defined by Webster's Third New International Dictionary as "being within or up to the limits of one's ability or capacity as determined by nature, authority, circumstances, or other controlling factor".

South Carolina held that in regulations of its public service commission requiring that the crossing span of a power line be "as short as practicable" that "practicable" did not mean "possible". Woody v. South Carolina Power Co., 202 S.C. 73, 24 S.E.2d 121.

In the case of In re Kenilworth Bldg. Corporation, 105 F.2d 673 (7th Cir.) the federal circuit court held in construing the Federal Bankruptcy Statute, that the word "practicable" is not synonymous with "possible" but means "feasible, fair and convenient" to the same effect as In re Philadelphia & Reading Coal & Iron Co., 104 F.2d 126 (3d Cir.). For these reasons I conclude that the predominating and controlling factor to be taken into consideration in determining the practicable form of the new districts is the population in each of the districts which must be as nearly equal as possible. This meets the federal standard as determined by a recent United States Supreme Court decision.

Lastly, the majority has found that Section 11–07–02 is also invalid, in that it violates the due process clause of the United States Constitution. They appear to premise their reasoning on the fact that the statute works a hardship upon the aggrieved person because it requires him to obtain the signatures of twenty-five per cent of the electors of the county as determined by the number of votes cast for the office of Governor in the preceding general election. There is no claim that it is discriminatory or arbitrary. The guaranty of due process, viewed in its procedural aspect, requires no particular form of procedure, nor does it control forms of procedure in state courts or regulate the practice therein. This is peculiarly the subject of state regulation and control. 16 Am.Jur.2d Constitutional Law, Section 549, p. 943. The fact that a rule of law may, in certain instances, work a hardship, does not violate the due process clause of the constitution, provided it operates without any discrimination, and, in like manner, against all persons of a class. 16 Am.Jur.2d Constitutional Law, Section 551, p. 949. Missouri Pacific Railway Co. v. Humes, 115 U.S. 512, 6 S.Ct. 110, 29 L.Ed. 463. There are numerous provisions in our statutes providing for the activation of some legislative process by petition. A quick perusal of the statutes governing counties discloses that a petition must be filed containing the signatures of fifty per cent of the electors in unorganized territory to form a county (Section 11–02–02, N.D. C.C.) and a petition containing fifty per cent of such electors are necessary to activate proceedings to obtain a division of a county or counties into new counties, (Section 11–03–02, N.D.C.C.). That, to increase the number of commissioners' districts and commissioners from three to five, or to decrease the same from five to three, requires a petition signed by twenty per cent of the electors, (Section 11–12–01, N.D.C.C.), and to initiate a proceeding to consolidate the counties requires the filing of a petition containing the signatures of thirty per cent of the qualified voters of a petitioning county (Section 11–05–02, N.D.C.C.). I do not believe the majority have correctly applied the due process clause of the federal constitution in this case.

For these reasons, I do not agree it was proper to hold the entire chapter unconstitutional. Under the decision as I would make it, the remaining portion of the statute would permit this petitioner to proceed on filing the required petition with the county auditor and reapportionment of the county commissioners' districts could be effected in Cass County before the next election.