**In re KENILWORTH BLDG. CORPORA-
TION.**

**KROESCHELL et al. v. BRITTAIN et al.
No. 6852.**

Circuit Court of Appeals, Seventh Circuit.
July 14, 1939.

674

J. Kentner Elliott, of Chicago, Ill., for appellants.

Frederick Z. Marx and Joseph D. Lawyer, both of Chicago, Ill., for appellees.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

This is an appeal from a decree of the District Court confirming a plan of reorganization. The proceeding below was an involuntary one filed pursuant to Section 77B of the Bankruptcy Act,[1] the appellees being bondholders and the petitioning creditors. The bonds were in default and foreclosure proceedings were pending in an Illinois state court at the date of the institution of reorganization proceedings.

The petition for reorganization was approved on June 14, 1938, as properly filed; and on July 15, 1938, the court, by order, fixed August 25, 1938 as a final date for the filing of claims of creditors. The order further provided that unless filed within such time no claim "may participate in any plan of reorganization herein, except on order of court for cause shown." It was further ordered that the trustee under the mortgage trust deed be authorized "to file a claim in this cause not only on behalf of said trustee under said trust deed individually but also on behalf of the holders of the bonds." Notice was thereafter issued to creditors, stockholders and claimants stating that the trustee was authorized to file a claim on behalf of the holders of the bonds.

In accordance with the foregoing the trustee filed a timely claim for the entire bond issue in the principal sum of $112,000; and this claim was allowed subject to deduction pro tanto for any duplicating claims which should be filed by individual bondholders.

Creditors holding bonds in the amount of approximately $30,000 and a bondholders' committee representing deposited bonds in the amount of $62,600 each proposed a plan. Both plans provided for the creation of a new corporation to acquire the debtor's assets and to issue shares in exchange for outstanding obligations of the debtor. The plans differed only in the following feature: The committee's plan provided that the shares should be issued to three trustees appointed by the court and held in trust for a period of ten years, such trust arrangement being subject to termination by 51% of the creditors. The court directed that only the committee's plan be submitted to the creditors for consideration, and upon submission sufficient creditors filed di-sents and objections to prevent confirmation of the plan.

The District Court was advised by counsel that the rejection of the plan was due to the antipathy of the creditors to the trust arrangement; but the court thereafter repeatedly informed counsel that no plan which did not include control through a trust arrangement for a definite term, subject to termination only by the court, would receive the confirmation of the court. Further, the court stated that it would not approve the committee's plan, which had been rejected by the creditors, because it provided for termination of the trust by vote of a majority of the creditors. Thereafter, the bondholders' committee proposed an amended plan of reorganization from which was omitted the provision authorizing termination of the trust by a vote of 51% of the creditors. The court ordered this plan to be filed and submitted to creditors.

In connection with the submission of the plan the court approved a communication to all of the creditors which stated in substance that the court would not approve any plan differing from the submitted plan; that the court would dismiss the proceedings unless such plan was accepted; and that if so dismissed the time and expenses incurred would be lost and jurisdiction revert to foreclosure proceedings. The communication contained the following statement: "The failure to execute and forward to the clerk of the court a written acceptance of the plan of reorganization is equivalent to a vote against the confirmation of the amended plan * * * This communication is being sent to you by authority of the court and it has been submitted to and approved by the judge before whom the case is now pending." The court entered two orders, the first of which authorized the committee to send the communication and a copy of the plan to bondholders *who had deposited their bonds with the committee,* and the second order provided that the committee should print copies of the communication and deliver them to the debtor and that the debtor should "cause *to be sent by mail to the*

---
[1] 11 U.S.C.A. § 207.

*creditors * * * (other than the depositing first mortgage bondholders)* a copy of said communication which shall be inclosed with the plan of reorganization * * * " (our italics).

After a hearing on confirmation of the committee's amended plan, the plan was confirmed despite the fact that consents to the plan represented only $47,800 worth of claims out of a total of $112,000 on the outstanding bond issue. The total consents to the plan fell far short of representing two-thirds of the claims filed and allowed if the claims filed by the trustee under the trust deed securing the bondholders are taken into consideration in the computation. The District Court, however, disregarded all the claims filed by the trustee and allowed by the court and considered only the claims filed by the bondholders' committee or by the individual claimants.

In support of the foregoing action the court ruled, and appellees contend, that Section 198 of the Chandler Act[2] is applicable and requires that the claims filed only by the trustee must be disregarded. The District Court also made a finding "that under the old practice the trustee would not be entitled to vote or his claim would not be counted."

We are of the opinion that under Sec. 77B the total amount of claims, two-thirds of which must be represented by assenting creditors, includes the claims filed by an indenture trustee which are allowed. The language of Sec. 77B is definite and unambiguous and makes it mandatory that written acceptances be filed by or on behalf of the creditors holding two-thirds in amount of the claims allowed.[3] Perhaps we should emphasize that the act requires an affirmative expression of acceptance but does not require a dissent. The necessary meaning is that if creditors holding more than one-third in amount of the claims allowed do not cause written acceptances to be filed the plan cannot be lawfully confirmed. The evident purpose of the provision is to insure that any plan which is adopted will have the advantage of the affirmative approval and support of creditors holding at least two-thirds in amount of claims allowed. For the purpose of filing written acceptances no distinction is made between claims filed by an indenture trustee and allowed and claims filed by individual creditors or by someone expressly authorized to file for them. The only restriction placed upon claims is that they be claims of creditors and that they be allowed. If a claim has been filed and allowed nothing in the act authorizes the striking of such claim from the amount of claims to be considered for purposes of acceptance of the plan. In short, the total amount of all claims which have been allowed constitutes the amount of claims, two-thirds of which must be voted for acceptance. In the instant case the trustee was expressly authorized to file a claim on behalf of all bondholders, the amount of the claim being subject to reduction pro tanto by subsequent filings of bondholders' committee or individual creditors. The trustee's claim was allowed and such allowance has not been expunged. The total amount of claims allowed was $112,000.

It does not follow from the foregoing that under Sec. 77B an indenture trustee has implied authority to file written acceptances. Since the language of Sec. 77B expressly requires that written acceptances be filed by or on behalf of creditors holding two-thirds in amount of the claims allowed, we think the reasonable construction is that anyone filing written acceptances on behalf of creditors must be specially authorized. But the relationship and duty of the indenture trustee to the bondholders is such that he would have implied authority to file claims for them even in the absence of a special authorization in the deed of trust. The court recognized the existence of this authority by authorizing the trustee to file claims for the bondholders subject to the right of the bondholders to withdraw his authority by filing their own claims or by expressly authorizing someone else to do so. The relationship and duty of the indenture trustee to the bondholders would not imply authority to bind these bondholders to an acceptance of a particular plan of reorganization.

We conclude that Sec. 77B requires the claims filed by the indenture trustee and allowed to be considered in determining the amount of the claims, two-thirds of which had to be represented by creditors assenting to the plan.

The finding of the District Court to the effect that under the old practice the

---

[2] 52 Stat. 893, 11 U.S.C.A. § 598.

[3] 11 U.S.C.A. § 207 (e) (1); 11 U.S.C.A. § 207 (f) (3).

claim filed by the trustee and allowed "would not be counted" is without effect in view of our construction of the language of Sec. 77B. Furthermore, no evidence appears in the record to support such a finding and apparently the only specific reference to the old practice is found in a statement of counsel for the bondholders' committee during the hearing on confirmation. The following is quoted from his statement: "Under 77B, there was no express provision authorizing the trustee to file a claim for the benefit of all outstanding bonds, but the trustees almost universally did so, and 77B provided it was necessary to have the affirmative acceptance of two-thirds of the claims allowed. There was no provision therein expressly providing the claim of the trustee was not to be taken into consideration in determining the two-thirds. However, in order to play safe, we always in those cases got two-thirds of the entire issue."

The Chandler Act, Section 276(c)[4] provides generally that Section 77B shall continue in force as to proceedings thereunder pending at the effective date of the Chandler Act; but Section 276(c) (2) provides as an exception to section 276(c) that "if the petition in such proceedings was approved more than three months before the effective date of this amendatory Act, the provisions of this chapter shall apply to such proceedings to the extent that the judge shall deem their application practicable * *. * ." The petition in the instant case was approved more than three months before the effective date of the amendatory act. The District Court ruled that the application of Section 198 of the Chandler Act was practicable. This Section reads as follows: "An indenture trustee may file claims for all holders, known or unknown, of securities issued pursuant to the instrument under which he is trustee, who have not filed claims: Provided, however, That in computing the majority necessary for the acceptance of the plan only the claims filed by the holders thereof, and allowed, shall be included." The District Court held that under this provision only the claims filed by the holders, or by the committee, and allowed, should be considered.

Granting that the District Court correctly construed Section 198 of the Chandler Act, we are of the opinion that the application of Section 198 is not practicable in view of the rulings of the court in the course of the reorganization proceedings prior to the submission of the plan, and especially in view of the understanding which the bondholder-creditors must have had. It is first necessary to consider the meaning of "practicable" as used in Section 276(c) (2) of the Chandler Act. The Circuit Court of Appeals for the Third Circuit construes the word "practicable" as follows:[5] "Practicable * * * is not synonymous with possible, but means feasible, fair and convenient." In view of what had transpired prior to the ruling of the court at the time of the report on acceptances, it was not "feasible, fair and convenient" to apply Section 198. Up to that time the conduct of the proceedings in respect to the adoption of the plan obviously was on the assumption that all claims filed and allowed had to be considered in determining whether creditors holding two-thirds in amount of claims allowed were in favor of acceptance.

The court's order of July 15, 1938 fixed the time limit for the filing of claims and provided that unless claims were filed within such time no claim "may participate in any plan of reorganization herein, except on order of court for cause shown." At the same time the court also ordered that the trustee under the Mortgage Trust Deed securing the bondholders was authorized "to file a claim in this cause not only on behalf of said trustee * * * individually but also on behalf of the holders of the bonds." Notice was thereafter issued to creditors, stockholders and claimants stating that the trustee was authorized to file a claim "on behalf of the holders of the bonds." When the plan which was confirmed by the court was submitted to the creditors for acceptance it was accompanied by a communication which contained the statement that "failure to execute and forward to the clerk of the court a written acceptance of the plan of reorganization is equivalent to a vote against the confirmation of the amended plan." The court entered an order authorizing the bondholders' committee to send the communication and a copy of the plan to bondholders who had deposited their bonds with the committee, and also provided that the committee should print copies of the communication and deliver them to the debtor

---

[4] 52 Stat. 905, 11 U.S.C.A. § 676.

[5] In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 104 F.2d 126, 127.

and that the debtor should "cause to be sent by mail to the creditors and stockholders of and claimants against said debtor and any of its property (other than the depositing first mortgage bondholders) * * * a copy of said communication, which shall be inclosed with the plan of reorganization." The record shows that when the original plan of the bondholders' committee was submitted "dissents from and objections to the plan of the reorganization were filed by the holders of a sufficient amount of bonds and certificates of deposit to prevent approval of the plan as submitted." Apparently holders of bonds generally, as well as holders of certificates of deposit with the committee, were treated as creditors who were entitled to file written acceptances of the plan. There is no indication that any holder of a bond whose claim had been filed by the indenture trustee and allowed had any reason to believe that it was necessary for him to refile his claim in order for his claim to be counted for purposes of acceptance, as a part of the total claims.

In view of the situation it was not "practicable" to apply Section 198 of the Chandler Act which, if correctly construed by the District Court, presupposes that all bondholders whose indenture trustee has filed claims will understand that it is necessary to refile their claims, and will have an opportunity to refile them, in order to have their claims taken into consideration in computing the majority necessary for the acceptance of the plan. In order for Section 198 to be "practicable" in any substantial and real sense it would have been necessary for the District Court to have set aside its order limiting the time for the filing of claims and to have afforded holders of bonds an opportunity to refile their claims for allowance with the understanding that such action was necessary in order to entitle their claims to be taken into consideration in the computation of the total amount of claims, of which two-thirds in amount must be represented by creditors who file written acceptances.

It would not be practicable to apply a provision of the Chandler Act if it authorizes confirmation of a proposed plan in case the plan is approved by creditors holding two-thirds in amount of about $74,000 of claims when the reorganization proceeding had been conducted on the assumption, and upon the understanding of all interested parties, that the proposed plan could not be confirmed by the court unless it should be approved by the holders of two-thirds in amount of $112,000. The application of the section of the Chandler Act brought about a result which, upon the basis of the written acceptances, it was impossible to attain under Section 77B; and since it was not invoked until after the plan had been submitted to holders of claims and until it was too late for holders of claims which had been filed by the indenture trustee to refile their claims, the result was to prevent their participation in the consideration of the plan. The application of Section 198 at the stage of the proceedings at which it was invoked could be construed "practicable" only in the sense that it afforded a strictly formal procedural means to secure acceptance of the plan. But in view of the stage of progress in the reorganization proceedings the application was impracticable in any substantial sense since it could not be said to be adapted to the effectuation of the true purposes of the reorganization proceeding.

We hold that the District Court's decree of confirmation of the plan of reorganization must be reversed and the cause remanded with directions to the District Court to set aside its decree of confirmation and for further proceedings not inconsistent with this opinion.

Decree reversed.