**In re NORTHERN REDWOOD LUMBER CO.**

**No. 27503–S.**

District Court, N. D. California, S. D.

Jan. 10, 1942.

Sterling Carr, of San Francisco, Cal., for trustee.

Hugh K. McKevitt, of San Francisco, Cal., for debtor.

Brobeck, Phleger & Harrison, of San Francisco, Cal., for Fentress Hill.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., for Detroit Trust Co.

William Bassett, Jr., of Washington, D. C., for Securities and Exchange Commission.

Keith & Creede, of San Francisco, Cal., for Limited Mut. Compensation Ins. Co.

Heller, Ehrman, White & McAuliffe, of San Francisco, Cal., for Wells Fargo Bank & Union Trust Co., and another.

Chickering & Gregory, of San Francisco, Cal., for Detroit Trust Co. and another.

Lillick, Olson, Levy & Geary, of San Francisco, Cal., for Bondholders' Committee, Northern Redwood Lumber Co.

ST. SURE, District Judge.

On April 4, 1936, debtor filed its petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The petition was thereafter approved and the administration of the estate proceeded. On December 1, 1938, debtor applied to the Reconstruction Finance Corporation for a loan

of $1,000,000 to consummate the plan of reorganization. The board of directors of the RFC adopted a resolution on August 29, 1939, thereafter amended by resolutions adopted June 11, 1941, July 23, 1941, and December 17, 1941, authorizing the loan.

On July 8, 1941, this court made its order requiring all persons having claims against the debtor or its trustee to file them on or before July 25, 1941. Claims were filed and submitted to the court for approval, as follows:

Sidney M. Hauptman, trustee for debtor's estate, $10,000 as additional compensation for services rendered; Sterling Carr, attorney for trustee, $10,000 as additional compensation for services; Hugh K. McKevitt, attorney for debtor, $300 as additional compensation for services; Fentress Hill, correspondent of Detroit Trust Company and member of Bondholders' Committee, $25,000 as compensation, and $14,078.55 for expenses incurred; DeWitt L. Wheaton, member of Bondholders' Committee, $1,500 as compensation, and $98.01 for expenses; Ray E. Danaher, Chairman of Bondholders' Committee, $2,725 as compensation, and $1,238.37 as expenses; Miller, Canfield, Paddock & Stone, attorneys for Detroit Trust Company, $10,000 as compensation; Heller, Ehrman, White & McAuliffe, attorneys for Wells Fargo Bank and the Charles Nelson Company, $8,000 as compensation; Detroit Trust Company, Indenture Trustee, $5,850 as compensation; the Charles Nelson Company, $6,200 for rent. The total amount of the claims presented is $94,989.93.

All parties understood that the claims allowed were to be regarded as expenses of administration and were limited to the total of $50,000 fixed by the RFC as one of the conditions of its loan commitment. A scaling down of some of the amounts requested is therefore necessary.

In passing upon the respective claims, the court availed itself of the services of the attorneys for the Securities and Exchange Commission, and acknowledgment is hereby made of the assistance given by William A. Bassett, Jr. In the allowances made I have adopted the recommendations of the SEC in all cases save two, where I felt impelled to disagree for reasons which I will now state.

Sidney M. Hauptman, Trustee for debtor, asked for $10,000 in addition to $5,000 already received by him. The SEC thought the request a reasonable one and recommended its allowance. Upon several occasions I have expressed my satisfaction with the manner in which Mr. Hauptman has performed the trust reposed in him, not only in this proceeding but also in the reorganization of the Charles Nelson Company, and its subsidiaries, somewhat related hereto. In those proceedings Mr. Hauptman has received compensation for his services, which in large measure rewards him for what he has done in this. I shall therefore allow him only $5,000 as additional compensation.

Fentress Hill, representative of the Detroit Trust Company and member of the Bondholders' Committee, asked $25,000 for services rendered, and $14,078.55 as reimbursement for expenses incurred. The SEC, while recognizing that "Mr. Hill has been active in all phases of the reorganization proceeding and has rendered substantial services, particularly in connection with negotiation of the plan of reorganization and obtaining the RFC loan to carry out the plan," submits that his claim should be denied, except for compensation in the sum of $1,750 as a depositary and exchange agent for the bonds. It says that the court is precluded by the provisions of section 249 of the Bankruptcy Act from making any allowance to him, other than that mentioned. It is argued that the disqualification results from the fact that on December 30, 1938, Mr. Hill purchased from a dealer $4,000 in principal amount of the debtor's bonds for $360. The evidence shows there was nothing sinister about this transaction, and that the purchase of the bonds was made merely as an accommodation to a broker who offered them for sale.

Section 249 was enacted as a part of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 649, which became effective September 22, 1938. The section reads as follows:

"Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such proceeding. No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a

representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred."

The present proceeding was begun under 77B of the Bankruptcy Act on April 4, 1936, and was pending more than two years before Chapter X became effective. The application of Chapter X to such pending proceedings is therefore governed by section 276, sub. c of the Act, 11 U.S.C.A. § 676, sub. c, which provides:

"The provisions of sections 77A and 77B of chapter VIII, as amended, of the Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, *shall continue in full force and effect with respect to proceedings pending under those sections upon the effective date of this amendatory Act, except that—*

"(1) if the petition in such proceedings was approved within three months prior to the effective date of this amendatory Act, the provisions of this chapter shall apply in their entirety to such proceedings; and

"(2) *if the petition in such proceedings was approved more than three months before the effective date of this amendatory Act, the provisions of this chapter shall apply to such proceedings to the extent that the judge shall deem their application practicable."* [Emphasis supplied.]

■■ As appears, the provisions of section 249 would be applicable here only "to the extent that the judge shall deem their application practicable." "Practicable, as used in the act, is not synonymous with possible, but means feasible, fair and convenient." In re Philadelphia & Reading Coal & Iron Co., 3 Cir., 104 F.2d 126, 127; In re Kenilworth Bldg. Corp., 105 F.2d 673. The record shows that I have made four orders (dated respectively June 22, 1939, August 6, 1940, December 12, 1940, and May 26, 1941), declaring certain sections of Chapter X applicable in this proceeding, but no order has been entered declaring section 249 applicable or making Chapter X as a whole applicable.

Naturally, I have kept in close touch with the progress of these proceedings. I have personal knowledge of the activities of Mr. Hill. He has labored persistently and tirelessly to accomplish the proposed plan of reorganization. His intelligent and valuable assistance, encouraged and sanctioned by the court, made possible the authorization by the RFC of the loan of $1,000,000, which assured consummation of the plan, a consummation devoutly wished by all concerned.

■ Under these circumstances and the facts shown, I feel that it would be neither fair nor equitable now to make section 249 applicable, and thus bar Mr. Hill from receiving at least a part of his just claim for compensation. I shall allow him the sum of $12,000 as compensation for his services. Were it not for the limitation of the fund made available by the RFC for the payment of costs of administration, I would have no hesitancy in allowing $25,000, the amount requested. In addition, for expenses incurred, I shall allow the amount named by the SEC, viz: $6,351.63, which the SEC indicated it would approve were it not for the inapplicable bar suggested by it.

Allowances upon the claims presented and considered are made as follows:

Sidney M. Hauptman, Trustee for debtor, $5,000 for additional compensation; Sterling Carr, attorney for trustee, $10,000 for additional compensation; Hugh K. McKevitt, attorney for debtor, $150 as additional compensation; Fentress Hill, correspondent of Detroit Trust Company and member, Bondholders' Committee, $12,000 for compensation and $6,351.63 for expenses; DeWitt L. Wheaton, member, Bondholders' Committee, $500 as compensation, and $98.01 for expenses; Ray E. Danaher, Chairman, Bondholders' Committee, $1,000 as compensation and $202.75 for expenses; Miller, Canfield, Paddock & Stone, attorneys for Detroit Trust Company, $3,500 as compensation; Heller, Ehrman, White & McAuliffe, attorneys for Wells Fargo Bank and the Charles Nelson Company, $4,500 as compensation; Detroit Trust Company, Indenture Trustee, $5,850 as compensation. The claim of the Charles Nelson Company of *$6,200 for rent is denied.*

The attorney for the trustee of debtor may submit an order accordingly.