In re PLANKINTON BLDG. CO.

MARSHALL & ILSLEY BANK v. GROSSMAN et al.

No. 8161.

Circuit Court of Appeals, Seventh Circuit.

May 3, 1943.

274

See, also, 133 F.2d 900 and 40 F.Supp. 517.

Herbert C. Hirschboeck, of Milwaukee, Wis., for appellant.

Maxwell H. Herriott, B. F. Saltzstein, E. H. Hallows, L. J. Burlingame, Howard T. Foulkes, Harvery C. Hartwig, E. C. Pommerening, Raymond Zillmer, and John M. Redford, all of Milwaukee, Wis., and Thos. B. Hart, of Chicago, Ill., John F. Davis, of Philadelphia, Pa., Ben S. Warren, Jr., of Chicago, Ill., W. Crosby Roper, Jr., of Washington, D. C., Arthur E. Boroughf, of Chicago, Ill., and Ervine J. Green, of Philadelphia, Pa., for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is an appeal from an order of the District Court in proceedings for reorganization of the Plankinton Building Company under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., prohibiting holders of bonds of the Plankinton Building Properties, Inc., who did not exchange their bonds for securities of the Plankinton Building Company within the time fixed by the court, from participating in the present reorganization of the latter.

Plankinton Building Properties, Inc., was reorganized in 1936, and the present debtor, Plankinton Building Company, was created under the plan which arose out of the prior 77B, 11 U.S.C.A. § 207, proceeding. That plan provided that the present debtor should take over the assets of Plankinton Building Properties, Inc., and should issue registered first mortgage leasehold income bonds and participating preferred stock so that "each holder of a first mortgage [bearer] bond in the sum of One Thousand Dollars ($1000) *shall receive* Five Hundred Dollars ($500) in new first mortgage leasehold bonds and ten (10) shares of participating preferred stock." No time limit was prescribed in the 77B proceedings within which the securities of the present debtor must be obtained. Pursuant to the 1936 reorganization plan, $1,038,500 of new bonds and the indenture securing them were executed and delivered to Marshall & Ilsley Bank, the indenture trustee.

All of the new bonds were authenticated by the indenture trustee's certificates pursuant to the terms of the trust indenture. Prior to the present proceedings, $25,000 of the new bonds were acquired by the debtor, delivered to the indenture trustee and cancelled, thus reducing the principal amount outstanding to $1,013,500.

In the present proceedings the court set August 9, 1940, as the time within which creditors of the debtor should file proofs of claim, and on that date the indenture trustee made proof of claim for $1,013,500 principal amount of bonds plus interest. Notice was given by the reorganization trustee of the debtor that the time for filing objections to claims filed should terminate November 1, 1941, and that a hearing would be held November 10, 1941. At that hearing the court by order allowed the claim filed by the indenture trustee in the amount of $1,013,500 plus interest. This order went unchallenged for more than six months.

On June 4, 1942, however, the reorganization trustee of the debtor filed a petition to reconsider, alleging that $28,250 in bonds of the present debtor had never been given out by the indenture trustee, so that the claim should have been allowed in the amount of $985,250, not $1,013,500. Hence the reorganization trustee asked the court to direct the indenture trustee to repay the interest on the bonds which the indenture trustee possessed and to bar the bondholders of the old corporation from participating in the debtor's assets unless they exchanged their bonds for securities of the debtor within a limited time. The only notice of the hearing given to the holders of bonds of the old corporation not exchanged for new bonds, was the notice to the attorneys for the indenture trustee. After hearing on June 29, 1942, the order appealed from was entered. This order reduced the amount of the allowed claim, as prayed, but provided that any holders of bonds of Plankinton Building Properties, Inc., who exchanged their bonds for bonds of the debtor within 60 days (later extended to 90 days) of the order, could participate, and directed that a notice to this effect be published once a week for two successive weeks in the two large Milwaukee newspapers and one Chicago newspaper. At the expiration of the 90 day period, enough old bonds had been produced so that the amount of uncalled-for new bonds in possession of the indenture trustee was reduced to $10,250.

On these facts, two salient issues appear: (1) were the holders of the old bonds creditors of the present debtor within the

meaning of the Bankruptcy Act; and (2) if they were creditors, are they entitled to participate in any reorganization plan of the present debtor.

First. Section 106(4) of the Bankruptcy Act, 11 U.S.C.A. § 506(4), defines a creditor as a "holder of any claim." And a claim is any character of claim against the debtor or its property, whether or not such claim is provable under § 63 of the Bankruptcy Act, 11 U.S.C.A. § 103, and whether secured or unsecured, liquidated or unliquidated, fixed or contingent. § 106 (1), 11 U.S.C.A. § 506(1). Since a broad construction should be given to the statute with respect to claims and creditors in order to dispose of all liabilities of the debtor in reorganization, American Service Co. v. Henderson, 4 Cir., 120 F.2d 525, 529, 135 A.L.R. 1414, we believe the holders of bonds of Plankinton Building Properties, Inc., have claims against the present debtor within the meaning of the statute.

Before Plankinton Building Properties, Inc., was reorganized, its bondholders were unquestionably creditors of that corporation, and their bonds furnished evidence of the obligation. When the order confirming the plan of reorganization of the corporation became final, their claims against the old corporation were changed by operation of law into claims against the new corporation, the present debtor. Cf. National Pumps Corp. v. American Pumps, 66 Ohio App. 175, 32 N.E.2d 422, reversed on other grounds, 138 Ohio St. 311, 34 N. E.2d 775. Since § 77B, sub. g of the old Act bound the old debtor, and § 77B, sub. h required the newly organized corporation, the present debtor, to undertake those claims reserved by the order confirming the plan, upon confirmation of the plan each $1,000 bond claim against the predecessor corporation became a $500 bond claim and a ten share preferred stock interest in its successor. True it is, the 77B proceedings provided for the exchange of the old bonds for new bonds so that the new bonds would coincide with the claims which they represented, since the old bonds no longer reflected the rights of their holders. The surrender of the old bonds, however, was not consideration, but a mere mechanical act not essential to create the claims, for the reason that each holder of the old bonds owed nothing as the price of a new bond, except to furnish evidence that he was entitled to the new bond. Thus, in our view, transmutation was worked by law, and no action by the holder of the old bond was necessary to effect the change.

Since the court in the 77B proceeding did not fix a time limit within which the old bondholders must secure the bonds from the present debtor, their claims must be allowed in this Chapter X proceeding unless barred by laches or the statute of limitations. The record fails to disclose laches and the statute of limitations in Wisconsin as to claims arising under a judgment or decree of a court is 20 years. Wis. Stats. § 330.16(1).

Second. As before noted, the indenture trustee filed a claim for the benefit of the old bondholders. Section 198 of the Bankruptcy Act, 11 U.S.C.A. § 598, provides that "An indenture trustee may file claims for all holders, known or unknown, of securities issued pursuant to the instrument under which he is trustee, who have not filed claims * * *." Under this statute, the indenture trustee had authority to file for the holders who had exchanged their old bonds for the new bonds. It is only as to the bonds which had not been called for that there can be any question. The District Court, 46 F.Supp. 697, ruled that the indenture trustee could not properly file a claim upon behalf of the holders of the debtor's bonds for $1,013,500 when it had in its possession bonds totaling $28,250 which had never been delivered to the persons entitled thereto.

The equitable owners of the bonds which had not been delivered to the persons entitled thereto, were unknown holders, so that the indenture trustee clearly had the power to put in a claim for those persons whom he represented, providing only that they were issued pursuant to the trust indenture. These bonds were unquestionably authenticated; the master made a special finding to that effect. And the trust indenture provided that "when thus authenticated, such certificate of the trustee shall be the conclusive and only evidence that the bond so certified was duly executed and issued hereunder and is entitled to the benefit of the trust hereby created." Certainly at the time that this bargain, embodied in the trust indenture, was made between the debtor and the indenture trustee as agent for the bondholders, the contracting parties contemplated that the indenture trustee should represent all the bondholders. And the fiduciary relationship between trustee and

cestui implies the right of representation, so that the trustee had implied authority to file claims. Cf. In re Kenilworth Building Corp., 7 Cir., 105 F.2d 673, 675.

We are of the opinion that as a trustee for the beneficial owners of the bonds, the indenture trustee was a trustee for all of the bondholders under the trust indenture, and that it was a sub-trustee of the new bonds for those bondholders who had not yet received them. In this, we observe again that the trust indenture which the debtor signed provided by its very terms that authentication was to be conclusive evidence that the bonds were "duly executed and issued." Hence the old bondholders were the holders of an equitable right which issued pursuant to the instrument of trust.

■ Further proof that the debtor recognized these bonds as outstanding obligations which it must meet is found in its payment of interest to the indenture trustee for the benefit of the bondholders when they should appear. If it could hold the unknown owners' money until called for, the indenture trustee should have the right to protect the obligation which was the source of that money, and the proper way to protect it was to file a claim. Completely apart from any statutory or express authority, a trustee may always act in the best interests of the cestuis by virtue of the implied or general authority inherent in the relationship. See In re Kenilworth Building Corp., supra; In re Prudence Co., D.C., 22 F.Supp. 264, 265.

Although not a technical point of law, a feature of this case, which must be noticed in a just disposal of it, is the relative rapidity with which the old bondholders appeared when they were in danger of losing their rights.[1] Thus, in November, 1941, the indenture trustee had $28,500 of new bonds in his possession. By September, 1942, this had shrunk to $24,250. Within the 90 day period fixed by the District Court, enough old bonds were presented so that the trustee by December 23, 1942, had only $10,250 of new bonds yet to be collected. And it was stated on oral argument that another old bondholder had appeared, but that the indenture trustee could not give him his new bonds and interest because of the District Court's decree. In

the light of this background, we do not feel that the old bondholders will remain forever unknown. At the end of the war or in some short period, and surely by the maturity date (January 1, 1951), it is highly probable that these investors or their transferees will appear, and it seems to us that they should not be deprived of their investment.

The order of the District Court will be reversed and the case remanded to proceed in accordance with this opinion. It is so ordered.

---

[1] We are well aware of the fact that the diligent efforts of appellees, as well as appellant, brought these holders to light, and they are to be commended for such action.