128

## In re FOX METROPOLITAN PLAY-HOUSES, Inc.

United States District Court
S. D. New York.

July 19, 1949.

Weisman, Celler, Quinn, Allan & Spett, New York City, for petitioner.

Rathbone, Perry, Kelly & Drye, New York City, for Central Hanover Bank & Trust Co.

RIFKIND, District Judge.

Petitioner, the successor to a debtor reorganized under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, seeks to reopen the proceedings, closed by a final decree of this court dated June 15, 1936, for the purpose of fixing a "cut-off" date for the surrender of obligations of the debtor in exchange for cash, debentures and stock of the petitioner. Pursuant to the provisions of a plan of reorganization approved in the mentioned proceedings, respondent is the depositary of cash and debentures of petitioner, both furnished by petitioner, and is empowered by petitioner to requisition from the transfer agent petitioner's class B stock, all for the purpose of exchange for the obligations of the debtor. Respondent asserts that it holds the cash, debentures and power to call for petitioner's stock in trust for the holders of the debtor's obligations, that the plan specified no final date beyond which such holders are barred and that the court is without jurisdiction now to establish such a date.

Heretofore an action was instituted in the New York courts by the petitioner to require the respondent to account to it for the cash theretofore unclaimed by the holders of the debtor's obligations and to enjoin respondent from requisitioning petitioner's stock. The action was dismissed on the ground that the federal courts had exclusive jurisdiction to interpret, administer, review and alter bankruptcy decrees. Fox-Metropolitan Playhouses, Inc. v. Central Hanover Bank and Trust Co., Sup., 1947, 71 N.Y.S.2d 88, affirmed unanimously w/o opinion 272 App.Div. 1044, 75 N.Y.S. 2d 281.

The reorganization plan provided that the holders of the debtor's obligations, identified as the Old Notes, and the holders

of Certificates of Deposit for Old Notes (deposited with respondent as depositary under a Noteholders' Protective Agreement) were to receive, in exchange for each Old Note, $200 in cash, $550 principal amount of New Debentures bearing 5% interest and maturing February 1, 1945, and 4 shares of Class B stock of the petitioner. Respondent is also a trustee under a mortgage indenture made by petitioner, pursuant to the reorganization plan, to secure the New Debentures. By the plan, respondent was empowered to requisition the shares of stock from the transfer agent, and to deliver the prescribed number of shares, New Debentures and the specified amount of cash to the holders of Old Notes and Certificates of Deposit as they surrendered them for exchange. Petitioner made the stock and New Debentures available, paid the cash to the respondent, paid to the respondent the interest as it became due on all the New Debentures, and upon the maturing of the New Debentures in 1945, paid to the respondent the total of their face amount, all without regard to the number of Old Notes and Certificates of Deposit actually exchanged. So it was required to do by the terms of the plan. The Indenture of Mortgage made to secure the New Debentures provides that on February 1, 1951, respondent is required to return to petitioner all monies held by respondent for the payment of interest and principal on the New Debentures, and that thereafter the holders thereof shall have recourse only to the petitioner for payment.

Respondent concedes that on February 1, 1951, it will be under a duty to return the monies remaining in its hands and held for the payment of interest and principal both on those New Debentures which were issued but have not been presented for payment, and those New Debentures which were never issued because the holders of Old Notes and Certificates of Deposit had not surrendered them for exchange. But it insists that it must retain power to requisition stock and possession of the New Debentures and cash which it is holding for the benefit of holders of unsurrendered Old Notes and Certificates of Deposit, because such holders are entitled by the terms of the reorganization plan to make the exchange whenever they choose, no "cut-off" date having been fixed.

The Chandler Act, Bankruptcy Act, §§ 204, 205, 11 U.S.C.A. §§ 604, 605, now authorizes the judge in a corporate reorganization "upon distribution", to "fix a time, to expire not sooner than five years after the final decree closing the estate" after which claimants and security holders of the debtor are barred. Section 77B of the Bankruptcy Act did not contain such a provision; neither the plan of reorganization nor the decree expressly imposed any time limitation.

■ Whether the court may now reopen the estate for the purpose of establishing a "cut-off" date for the surrender of the debtor's obligations in exchange for the cash and securities of the successor corporation is a question which presents some difficulty. Bankruptcy Act, § 2, sub. a(8), 11 U.S.C.A. § 11, sub. a(8); cf. Duebler v. Sherneth Corporation, 2 Cir., 1947, 160 F.2d 472; 6 Collier on Bankruptcy, (14th ed. 1948) 2892, 3933-6.

It need not be resolved here because both petitioner and respondent agree, and there is no doubt, that the bankruptcy court has jurisdiction to construe its own decree. Shores v. Hendy Realization Co., 9 Cir., 1943, 133 F.2d 738; In re Hermitage Bldg. Corp., 7 Cir., 1938, 100 F.2d 597.

■ I do not construe the reorganization plan in this case as intending to establish a perpetual trust fund for the purpose of making the exchange. By the plan, all the assets of the debtor were vested in the petitioner. The creditors of the debtor were to receive, in discharge of their claims against the debtor, cash, debentures and stock of the petitioner. Respondent was the instrument through which the exchange was to be effectuated. The mortgage carefully provided that after the lapse of six years from the maturity of the New Debentures issued by the petitioner, respondent would return to petitioner the unclaimed funds deposited to meet interest and principal on the New Debentures

whether issued to holders of. Old Notes or not. The purpose of this provision is plain enough. After the lapse of six years after maturity of the obligations, it would rest with the petitioner whether it would contest the claims with the defense of the statute of limitations. It seems illogical that the unclaimed funds deposited to meet the New Debentures should be returned to the obligor but that the evidence of the claims should remain outstanding in the hands of the agent for delivery in exchange for the Old Notes. Similarly it is inexplicable why the cash equivalent of the New Debentures should be returned to the petitioner and the stock and cash allocated to the Old Notes should remain with the agent. Manifestly cash, stock and New Debentures were all equally part of the consideration for the discharge of the Old Notes. No reason is suggested why two parts of that consideration should be regarded as conveyed in perpetual trust whereas the third part should be treated otherwise. The more rational interpretation of the scheme of reorganization is to treat all parts of the consideration moving to the creditors as of equal status. The omission of appropriate language to express such intention is best treated as an oversight. This does no violence to the express language of the plan, since it contains none of the customary phraseology employed in the creation of a perpetual trust or agency.

I therefore conclude that on February 1, 1951, respondent will be obliged to surrender to the petitioner all the funds, New Debentures and power to requisition stock it is then holding for the purpose of exchange or redemption. The holders of New Debentures who on that date have failed to present them for redemption are by the terms of the mortgage left to such remedies as they may have against the petitioner. Similarly the holders of Old Notes and Certificates of Deposit are to be left to such remedies, if any, as they may have against the petitioner. Cf. In re Plankinton Bldg. Co., 7 Cir., 1943, 135 F.2d 273, which treats creditors who failed to exchange their bonds for securities of the successor corporation as creditors of the successor corporation, there having been no "cut-off" date provided in the debtor's reorganization plan.

Since all Old Notes and Certificates may, by February 1, 1951, have been fully exchanged, the questions of what rights their holders may thereafter have against petitioner, and whether a "cut-off" date can or should be fixed, may become moot, and should therefore not now be decided.

■ Respondent's claim for reimbursement of its disbursements, including counsel fees, in this proceeding, is allowed. The mortgage indenture provided that "The Trustees shall be entitled to be reimbursed for all proper outlay of every sort and nature by them or either of them made and incurred in the acceptance and discharge of their trusts hereunder, including counsel fees * * * ", from the petitioner. The indenture made the respondent trustee of the property securing the New Debentures, trustee of the funds deposited with it by petitioner to pay interest and principal on the Debentures, attorney for the Debenture holders, and agent of the petitioner to make the exchange of old for New Debentures. Its response to this petition was an exercise of its duty to protect the interests of those entitled to obtain New Debentures.

Since no affidavits have been submitted respecting the amount of disbursements and counsel fees, such affidavits may be submitted with a proposed order, on notice to petitioner.