La Salle National Bank, as Trustee, etc., Appellant, v. Cora Britton et al., Appellees.

Gen. No. 46,204.

Opinion filed May 11, 1954. Rehearing denied June 2, 1954. Released for publication June 3, 1954.

SHULMAN, SHULMAN, ABRAM & JOSEPH, of Chicago, for appellant.

ERNEST F. STAUB, of Chicago, for certain appellees.

MR. JUSTICE ROBSON delivered the opinion of the court.

The La Salle National Bank, plaintiff, as assignee of Devonshire Hotel, Inc., a corporation reorganized in the United States District Court under the Federal Bankruptcy Act, filed a complaint in chancery to cancel undelivered Voting Trust Certificates issued in the names of the individual defendants, and to obtain payment of certain cash proceeds and dividends applicable to these certificates, in accordance with what is alleged to be the requirements of a final decree of the United States District Court. The Chicago Title & Trust Company, also a defendant, is in possession of the undelivered Voting Trust Certificates. The cause was heard on the pleadings and on written briefs submitted by the parties. The chancellor in the trial court entered the decree denying the relief sought by plaintiff. This appeal is from that decree.

The pertinent facts are undisputed. The plan of reorganization of Devonshire Hotel, Inc., was approved by the Federal District Court on September 28, 1938, and provided for the issuance of 5,145 shares of capital stock and for the delivery of such shares to three voting trustees named by the court. The trustees were to issue Voting Trust Certificates in exchange for the outstanding bonds of Devonshire Hotel, Inc., at the rate of one trust share for each $100 principal amount of bonds. In due course, all but $2,400 of the bonds were surrendered for cancellation, and the holders of the bonds so surrendered received Voting Trust Certificates aggregating 5,121 trust shares. Of the bonds surrendered, 95% were turned in by the Bondholders' Protective Committee which had previously received them from the respective individual holders and had issued transferable Certificates of Deposit in exchange for the bonds deposited with the committee under the terms of a Deposit Agreement. The agreement provided for the appointment of a depositary, assignment to the committee of the full legal and equitable title

to the bonds deposited, and authorized the committee to take such action as might be necessary or appropriate to protect the interests of the depositors. When the committee tendered its deposited bonds pursuant to the reorganization plan in exchange for Voting Trust Certificates, it furnished the voting trustees with a list of its depositors and directed that the Voting Trust Certificates to be issued in exchange for the bonds held by the committee be registered in the names of those to whom Certificates of Deposit had been issued, and that such Voting Trust Certificates be delivered to the committee's depositary, Chicago Title & Trust Company, which would distribute them to the holders of Certificates of Deposit. This was done. The committee then notified its depositors to surrender their Certificates of Deposit in exchange for the Voting Trust Certificates registered in their respective names. In due course, all of the holders of Certificates of Deposit, except the individual defendants, surrendered their Certificates of Deposit and received their Voting Trust Certificates. Thus there were at the time of the commencement of this controversy: (1) Voting Trust Certificates issued to those bondholders who had not deposited their bonds with the Bondholders' Committee and which were held by the Chicago Title & Trust Company as agent of the voting trustees, and which amounted to 24 trust shares. These Voting Trust Certificates were surrendered to the voting Trustees for cancellation by the Chicago Title & Trust Company. (2) Voting Trust Certificates which had been issued to bondholders who had deposited their bonds with the Chicago Title & Trust Company, as depositary of the Bondholders' Committee, but who had not presented their Certificates of Deposit to the Chicago Title & Trust Company and received their Voting Trust Certificates. These amounted to 48 shares and are the subject of the present controversy.

In a letter to the depositing bondholders dated June 3, 1939, the committee stated that successful completion of the reorganization made further action by the committee unnecessary; that no further transfers of Certificates of Deposit would be recognized after June 9, 1939; that the Deposit Agreement would be terminated "as to the bonds of this issue" on June 8, 1939; and that the depositors should exchange their Certificates of Deposit for Voting Trust Certificates.

On June 4, 1942, a final decree in the federal court was entered in the reorganization, providing in part:

"10. That all Voting Trust Certificates not heretofore delivered in exchange for Bonds as provided in the Plan, shall continue to be held by Chicago Title and Trust Company, as Agent under the said Trust Agreement dated February 17, 1939, relating to the capital stock of Devonshire Hotel, Inc., or by the successor of said Chicago Title and Trust Company, as such Agent, for delivery to the persons entitled thereto under the Plan, and upon the termination of said Trust Agreement all Voting Trust Certificates which have not theretofore been distributed shall be cancelled and the distributable portion of the property held under said Trust Agreement applicable to such unexchanged Voting Trust Certificates shall be held by said Agent, or its successor, or by Devonshire Hotel, Inc., for delivery to the persons entitled thereto; provided, however, that any such Voting Trust Certificates (or the proceeds thereof) which have not been distributed within five (5) years from the date of entry of this decree shall be delivered to said Devonshire Hotel, Inc., or its successors or assigns, to be and become the property of said Devonshire Hotel, Inc."

Early in 1950 the voting Trustees were negotiating a sale of all the issued and outstanding stock of the debtor, and they instructed Chicago Title & Trust Company, acting as the agent of the voting trustees

390

for the transfer of trust certificates and for the disbursement of dividends, to take the following action:

"(a) To surrender for cancellation all Trust Certificates which had not theretofore been issued in exchange for bonds.

"(b) To surrender for cancellation the Trust Certificates issued in the names of Committee depositors who had not yet taken delivery of such Certificates by surrendering their Certificates of Deposit; and

"(c) To return all dividends previously declared and paid on both groups of Trust Certificates."

As we have stated, the Chicago Title & Trust Company complied with the directions set forth in sections (a) and (c) as to the 24 trust shares issued for the nondepositing bondholders, and that is not in controversy. But as to sections (b) and (c) or the group of Voting Trust Certificates issued for the depositing bondholders, the Chicago Title & Trust Company advised the voting trustees it could not comply because, pursuant to the plan of reorganization, these certificates had actually been issued in exchange for bonds and delivered to the Chicago Title & Trust Company, as the committee's depositary, for the benefit of the registered owners of said certificates. As to these, the Chicago Title & Trust Company contends that it occupies a fiduciary relationship by virtue of its having acted as the depositary for the depositing bondholders and the circumstances under which the Voting Trust Certificates were delivered to it. It says that it does not claim these as its own property; that they are in its possession as unclaimed property such as an unclaimed bank deposit or other credit. Plaintiff, on the other hand, contends that that portion of the barring order which provides that any Voting Trust Certificates not distributed within five years shall be delivered to Devonshire Hotel, Inc. and become its

391

property, applies to those Voting Trust Certificates issued for the deposited bonds.

Prior to the consummation of the sale of the stock of Devonshire Hotel, Inc., it had executed and delivered to the plaintiff, La Salle National Bank, as Trustee, an assignment of its right, title and interest, if any, in the Voting Trust Certificates, the dividend distributions theretofore made with respect thereto, and any proceeds applicable thereto by reason of any sale of the debtor's stock as set forth in section (b) of the direction.

After plaintiff filed its complaint in this cause, defendant Chicago Title & Trust Company filed a petition in the United States District Court to enjoin further action in this cause and for clarification of that court's final decree. The United States District Court entered an order denying the injunction and holding that it was the duty of the circuit court to interpret the provision of the barring order.

██ ██ Let us analyze the facts and the law that is applicable. Devonshire Hotel, Inc. and its bonds were the subject matter of the reorganization proceedings. The bonds, not the Certificates of Deposit, were claims against the corporate property. The decree of June 4, 1942, providing for a cutoff date, was entered pursuant to section 204 of chapter X (11 U. S. C. A., section 604), which provides that the judge may fix a time to expire not sooner than five years after the final decree closing the estate, within which, as provided in the plan or final decree—

"(1) the *creditors,* other than holders of securities, shall *file,* assign, transfer or release their *claims;* and

"(2) the holders of *securities* shall present or surrender their *securities.* After such time no such *claim* or *stock* shall participate in the distribution under the plan."

Bondholders are creditors, not stockholders; they have claims, not interests. *In re Plankinton Bldg. Co.* (C. C. A., 7th), 135 F.2d 273, 275. Section 224 (11 U. S. C. A., section 624) provides that upon confirmation of a plan ". . . (4) distribution shall be made, in accordance with the provisions of the plan, to *creditors* and stockholders (a) proofs of whose *claims* or stock have been *filed* prior to the date fixed by the judge and are allowed . . . ."

█ Section 209 (11 U. S. C. A., section 609) provides that creditors may act in a proceeding under chapter X "by a duly authorized agent or committee." A bondholders' committee is authorized under a deposit agreement to file and prove claims. It is in the position of the creditor. (Cf. section 198 (11 U. S. C. A., section 598); *In re Plankinton Bldg. Co., supra;* and see *Penn-Florida Hotels Corp. v. Atlantic Nat. Bank* (C. C. A., 5th), 84 F.2d 15, 16; *In re Marquette Manor Bldg. Corporation* (C. C. A., 7th), 97 F.2d 733, 734, cert. den. 305 U. S. 648.)

██ In the instant case the terms of the decree were complied with when the Bondholders' Committee tendered the bonds to the voting trustees who then issued the Trust Certificates to the defendant depositary in the names of the depositing bondholders to whom Certificates of Deposit had been issued pursuant to the plan of reorganization approved by the United States District Court and adopted by the committee on behalf of the depositing bondholders. We conclude that the plaintiff is not entitled to the Voting Trust Certificates, dividends and proceeds demanded by it under sections (b) and (c) of the direction.

█ Plaintiff's final contention is that the Chicago Title & Trust Company does not stand in a fiduciary capacity toward the depositing bondholders and therefore is not entitled to hold the Voting Trust

Certificates for the depositing bondholders. The functions of the depositary under the agreement are primarily for the benefit of bondholders. (See *Breen v. Mortgage Commission,* 39 N.Y.S.2d 949, 954.) The depositary as well as the committee may under some circumstances act in a fiduciary capacity toward the bondholders who deposited their bonds with it. (See *In re Marquette Manor Bldg. Corporation, supra; Breen v. Mortgage Commission, supra.*) Even though the work of the Bondholders' Committee has ceased, that of the depositary does not until the Voting Trust Certificates are delivered to the persons entitled thereto under the plan. (Cf. *In re Fox Metropolitan Playhouses* (D. C., N. Y.), 85 F. Supp. 128.) Under the circumstances, we are of the opinion that the depositary stands in the position of a fiduciary to the depositing bondholders and holders of the Certificates of Deposit. Defendant Chicago Title & Trust Company is required to hold the Voting Trust Certificates and proceeds therefrom for delivery to the depositing bondholders entitled thereto under the plan, and the barring order does not apply to them.

The decree of the trial court is affirmed.

*Decree affirmed.*

SCHWARTZ, P. J., concurs.
TUOHY, J., took no part.